David Bryan FLETCHER, Plaintiff,

v.

SCREVEN COUNTY, GEORGIA, and Mike Kile, Individually and in his Official Capacity as Sheriff, Defendants.

No. CV 698–189.

United States District Court,
S.D. Georgia,
Statesboro Division.

Feb. 9, 2000.

Bobby T. Jones, Jones & Smith, PC, Metter, Teresa Saggese Mills, Atlanta, GA, for David Bryan Fletcher, plaintiff.

Marvin W. McGahee, Brennan & Wasden, Savannah, GA, for Screven County, Georgia, Mike Kile, defendants.

## *ORDER*

EDENFIELD, District Judge.

### I. *INTRODUCTION*

Plaintiff David Bryan Fletcher brought this 42 U.S.C. § 1983 action against Scre-

ven County, Georgia (the County) and its sheriff, Mike Kile, alleging, inter alia, that Kile unconstitutionally and maliciously arrested Fletcher following a verbal confrontation between Fletcher and Kile's wife. Doc. # 1. The defendants now move for summary judgment.[1]

## II. BACKGROUND

Fletcher and Kile's wife, Helen, worked at the Screven County office of the Department of Family and Children Services (DFACS).[2] Fletcher dep. at 22–23. On 5/6/97, Fletcher entered Mrs. Kile's office and berated her for the way she treated him and his clients, telling her, "Your attitude sucks," and "If I were your supervisor, I would fire your ass." Doc. # 37 ¶ 12. Fletcher stood across Mrs. Kile's desk from her as he spoke, about 9 feet from her. Fletcher dep. at 44, 62. Mrs. Kile testified that he shut the door as he entered her office, and stood between her and the door. H. Kile dep. at 28, 30. She claims that he raised his voice (which he disputes, see Fletcher dep. at 48), but did not make a fist or move to strike her. H. Kile dep. at 34–35. After several minutes, he left her office. Id. at 32, 41.

The next day, Mike Kile appeared before a superior court judge and obtained, against Fletcher, an arrest warrant for simple assault, along with a "good behavior warrant." M. Kile dep. at 51–54. He told the judge that Fletcher came into his wife's office, "blocked her exit ... was yelling and screaming and hollering at her [and] put her in great fear of her own personal safety and she was [afraid of] going back to work." Id. at 54. The judge signed the warrants. See doc. # 36 exh. B, C.

Kile then directed a deputy to arrest Fletcher. M. Kile dep. at 59. The deputy met Fletcher at the DFACS office, arrested him, and took him to the jail. Fletcher dep. at 78–83. There he was processed and fingerprinted. Though not put in a cell or physically restrained, Fletcher was not free to leave. Id. at 86–87; M. Kile dep. at 75. He was released at about 10:30 or 10:45 that evening. Fletcher dep. at 102.

Fletcher testified that, while at the jail, Kile made the following comments to him: "You found a bigger bully, didn't you?"; "Don't you ever go near my wife; talk to my wife; or speak to my wife ever again. Do you understand me?"; and "Make yourself at home." Id. at 95–96, 100. Grady Jenkins, the County's Chief Magistrate and a friend of Fletcher's, saw Fletcher at the jail and asked Kile if anyone was coming to bond Fletcher out. Jenkins claims Kile responded that he didn't know if he would allow Fletcher a bond for 48 hours and that he was "gonna teach [Fletcher] not to fuck with the sheriff's wife." Jenkins dep. at 19–20. After receiving a call from the District Attorney, Kile allowed Fletcher to post bond, which Jenkins signed. Id. at 20–23. After Fletcher was released, the District Attorney dismissed the warrants. M. Kile dep. at 78.

## III. ANALYSIS

### A. The County's Liability[3]

■ A county may be liable under § 1983 for the actions of its sheriff if the sheriff's actions "constitute county policy." *McMillian v. Monroe County*, 520 U.S.

1. The Court applies the summary judgment standards exhaustively detailed in *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) and *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir.1996).

2. For simplicity, the Court will refer to Mike Kile as "Kile," and will refer to Helen Kile as "Mrs. Kile."

3. Since Fletcher's claims against Kile in his official capacity are in reality claims against the County, see *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir.1999), the following dis-

781, 783, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (quotes omitted). Kile has admitted that the County "does not direct how the Sheriff's department carries out its law enforcement duties." Doc. # 36 exh. A ¶ 5. Kile therefore is the policymaker regarding law enforcement issues within Screven County. The question, then, is whether he makes policy for the County or the State.[4] *See id.* at 785, 117 S.Ct. 1734.

This inquiry depends on State law. *See id.* at 786, 117 S.Ct. 1734 ("[O]ur understanding of the actual function of a government official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law"). Alabama law, the *McMillian* Court held, established that county sheriffs are State officers who make policy for the State, not their individual counties, when they perform their law enforcement duties. *Id.* at 793, 117 S.Ct. 1734. The defendants submit that Georgia law compels the same conclusion. Doc. # 38 at 9.

The *McMillian* inquiry begins with examination of the State constitution. Whereas Alabama's constitution includes sheriffs as members of the executive department, along with, inter alios, the governor, lieutenant governor, and attorney general, *see McMillian*, 520 U.S. at 787, 117 S.Ct. 1734, the Georgia constitution explicitly denominates sheriffs as "county officers," and provides that they shall be elected by "the qualified voters of their respective counties." *See* GA. CONST. Art. 9, § 1, ¶ 3.

Moreover, the State has declared sheriffs to be "the basic law enforcement offi-cer[s] of the several counties of this state," O.C.G.A. § 15–16–1, and has expressly authorized sheriffs to contract with municipalities within their respective counties to provide law enforcement services for the municipality, *provided that the county consents in writing and is reimbursed for the sheriff's costs.* O.C.G.A. § 15–16–13 (emphasis added). And the sheriff's salary, while subject to a minimum imposed by State law, is paid from county funds. O.C.G.A. § 15–16–20(a)(1).

However, the pivotal issue in determining whether a sheriff makes law enforcement policy for his county or State is which body ultimately has the power to control or direct the sheriff's performance of his law enforcement duties. After all, a sheriff's actions cannot be said to "speak . . . for the local government[ ]," *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), if that local government has no say in what actions he takes.

Georgia law denies the County that requisite control. First, sheriffs are constitutional officers, rather than county employees. *Board of Comm'rs of Randolph County v. Wilson*, 260 Ga. 482, 482, 396 S.E.2d 903 (1990). Second, sheriffs' duties are prescribed by State statute, *see* O.C.G.A. § 15–16–10, and a county may not use its budgetary power to deny the sheriff funds to carry out his law enforcement duties or dictate how they should be discharged. *Chaffin v. Calhoun*, 262 Ga. 202, 203, 415 S.E.2d 906 (1992). Third, a sheriff is subject to investigation and suspension by the governor, rather than by county officials. O.C.G.A. § 15–16–26.

Fourth, while a sheriff is paid from county funds, his minimum salary is set by

---

cussion pertains to those claims as well as the ones nominally against the County.

4. Specifically, the question is whether Kile makes *law enforcement* policy for the County or State, because "cases on the liability of local governments under § 1983 instruct [courts] to ask whether governmental officials are final policymakers for the local government *in a particular area, or on a particular issue.*" *McMillian*, 520 U.S. at 785, 117 S.Ct. 1734 (emphasis added).

the State. And each county is "under a duty to adopt a budget making reasonable and adequate provision for the personnel and equipment necessary to enable the sheriff to perform his duties of enforcing the law and preserving the peace." *Chaffin*, 262 Ga. at 203, 415 S.E.2d 906 (quoting *Wolfe v. Huff*, 233 Ga. 162, 164, 210 S.E.2d 699 (1974)) (internal quotation marks omitted).

Importantly, Alabama sheriffs are also elected by county voters and paid from county funds, but the *McMillian* Court found these facts insufficient: "The county's payment of the sheriff's salary does *not translate into control* over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely." 520 U.S. at 791, 117 S.Ct. 1734. Although Georgia counties, like Alabama ones, can reduce the sheriff's budget so long as it remains "reasonable," the Court determined that this "attenuated and indirect influence over the sheriff's operations" was inadequate to establish county liability. *Id.* at 792, 117 S.Ct. 1734.

For support, Fletcher points to *Hamilton ex rel. Hamilton v. Cannon*, 864 F.Supp. 1332, 1335–36 (M.D.Ga.1994), *rev'd on other grounds*, 80 F.3d 1525 (11th Cir. 1996) (applying State law to conclude that "Georgia counties and sheriffs appear inextricably intertwined, and the acts of the sheriff are therefore the acts of the county"). Doc. # 48 at 16–17. *Cannon*, however, was decided before *McMillian*, and, significantly, cited no Georgia cases. Moreover, its apparent test (i.e., whether State law "inextricably intertwine[s]" counties and their sheriffs) does not appear to be the law, post-*McMillian*.

In sum, although Georgia law declares sheriffs to be county officers, and directs that counties elect and pay their sheriffs, it cedes to counties no meaningful level of control over a sheriff's law enforcement activities. Since a county has no hand in the formulation or discharge of its sheriff's law enforcement duties, the sheriff's conduct in that area cannot be said to constitute county policy for § 1983 liability purposes. Therefore, Screven County cannot be held liable for Kile's law-enforcement-related conduct.

## B. Sheriff Kile's Liability

Kile argues that he is entitled to summary judgment on Fletcher's claims against him individually because (1) probable cause to arrest Fletcher existed; and (2) Kile is entitled to qualified immunity. Doc. # 38 at 13. Fletcher contends that he has raised a genuine factual issue as to probable cause, and Kile is not qualifiedly immune. Doc. # 48 at 20.

 The existence of probable cause "constitutes an absolute bar to ... § 1983 claims alleging false arrest." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir.), *cert. denied*, 525 U.S. 823, 119 S.Ct. 67, 142 L.Ed.2d 52 (1998). However, an arresting officer may prevail even in the absence of probable cause. Although it is clearly established that an arrest without probable cause is unconstitutional, *Redd v. City of Enterprise*, 140 F.3d 1378 (11th Cir.1998), qualified immunity applies "if there was *arguable* probable cause for the arrest." *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir.1999) (emphasis added; footnote omitted). Therefore, Kile is immune "if a reasonable police officer, knowing what [Kile] knew, could have believed there was probable cause" for obtaining the arrest warrant. *Id.*[5]

Fletcher argues that qualified immunity does not apply here because "[d]irect evi-

---

5. Although *Jones* concerned a warrantless arrest, the Supreme Court has held that the qualified immunity tests are analogous; they thus may be applied here. *See Malley v.* *Briggs*, 475 U.S. 335, 344–46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would

dence of Sheriff Kile's malicious intent exists." Doc. # 48 at 20. However, courts have unambiguously held that an officer's subjective belief is irrelevant to the probable cause/qualified immunity analysis. *See Whren v. U.S.*, 517 U.S. 806, 811, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("[O]nly an undiscerning reader would regard [precedent] as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred"); *Rankin*, 133 F.3d at 1433–34 ("[T]his Circuit explicitly rejected the idea that the subjective belief of the arresting officer is relevant to the determination of whether probable cause exists"). Thus, the only question is whether a reasonable officer in Kile's place—knowing what he knew at the time—could have believed that there was probable cause to think that Fletcher had assaulted Mrs. Kile.

Under Georgia law, a person commits the crime of simple assault when he "either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16–5–20. "The offense of simple assault is complete if there is such a demonstration of violence, coupled with an apparent ability to inflict injury so as to cause the person against whom it is directed to reasonably fear that he will receive an immediate violent injury unless he retreats to secure his safety." *Hudson v. State*, 135 Ga.App. 739, 740–41, 218 S.E.2d 905 (1975).

The evening after the incident, Mrs. Kile told her husband the same version of events that she described in her deposition. H. Kile dep. at 58–59. Thus, she told him Fletcher entered her office and shut the door behind him, stood at the edge of her desk, and spoke to her in a loud voice for several minutes, telling her, "Your attitude sucks," and "If I was your director . . . I would fire your ass." *Id.* at 28–32, 36. She admitted that Fletcher made no overt move or threat to harm her:

Q: Did he at any time make any effort to harm you physically during that meeting?

A: Other than standing by me in a threatening manner. He didn't ball up his fist or anything of that kind.

Q: Didn't swing at you?

A: No.

Q: Didn't try to slap you or anything like that, did he?

A: No.

Q: Can you describe for us what you mean when you said he stood there in a threatening manner?

A: He was over me. I was sitting. He is standing. He's taller than me. He had a . . . he was just . . . his nature was just violent. He wasn't peaceful.

*Id.* at 34–35.

Kile himself said his wife told him that Fletcher "[p]ointed his finger at her, waived [sic] his arms at her, and she felt in fear of her personal safety. . . . He was standing above her, screeching, yelling, hollering at her, in a threatening manner." M. Kile dep. at 30. He admitted she didn't

have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant"). The Court reasoned:

If [no arguable probable cause existed], the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would

be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Id.* at 345–46, 106 S.Ct. 1092 (footnote omitted).

**1382**

tell him that Fletcher had physically threatened her:

Q: Well, your wife, in fact, told you that he never struck her? Right?

A: She told me he never struck her.

Q: Now, did your wife ever say that he swung at her in an effort to strike her?

A: No, sir.

Q: Did your wife tell you that Mr. Fletcher ever threatened her any physical harm, verbally?

A: Other than "I'd fire your ass if I could." That would be about it.

Q: Well, that's not physical harm Sheriff. I'm talking about has he ever ... did your wife ever say that Mr. Fletcher verbally threatened to physically assault her?

A: No, sir.

*Id.* at 32–33.

■ "Probable cause exists if the facts and the circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997) (quotes and cite omitted); *see also Brown v. State,* 262 Ga. 728, 729, 425 S.E.2d 856 (1993) (same). Since the standard here is not probable cause but arguable probable cause, the question is whether a reasonable person, knowing what Kile knew on 5/7/97, could possibly have believed that Fletcher had assaulted Mrs. Kile. The evidence is uncontradicted that Kile knew that Fletcher had done nothing to threaten Mrs. Kile other than

stand near her and yell at her. Although being yelled at is undeniably hurtful and distressing, no reasonable person would fear immediate, violent injury from such conduct. And no reasonable police officer could believe that a mere verbal confrontation constituted criminal assault. If it were otherwise, the police would have probable cause to jail anyone involved in a heated argument.

The Court concludes that no actual, or even arguable, probable cause existed to arrest Fletcher on 5/7/97. Thus, qualified immunity does not apply and Fletcher's § 1983 claim is not barred. Because there was no probable cause for Fletcher's arrest, Kile's arguments for dismissal of Fletcher's State law claims also fail. Because the evidence undergirding this holding comes from Kile himself and is uncontradicted, the Court not only denies Kile's summary judgment motion, but *sua sponte* grants partial summary judgment to Fletcher on the issue of whether probable cause existed for his arrest.[6]

**IV. CONCLUSION**

Accordingly, the Motion for Summary Judgment (doc. # 36) by defendants Mike Kile and Screven County, Georgia, is ***GRANTED IN PART AND DENIED IN PART.*** The claims against Screven County are ***DISMISSED WITH PREJUDICE.*** Plaintiff's claims against Mike Kile in his official capacity are ***DISMISSED WITH PREJUDICE,*** but his claims against Kile in his individual capacity remain. The Court grants defendant Kile leave to show, within 15 days from the date this Order is served, why the Court should not enter partial summary judgment against him on the issue of whether probable cause sup-

6. While courts are authorized to grant summary judgment *sua sponte,* F.R.Civ.P. 56 requires that litigants be given notice and an opportunity to respond before judgment is entered against them. *Massey v. Congress Life Ins. Co.,* 116 F.3d 1414, 1417 (11th Cir. 1997). Therefore, the Court is granting Kile leave to respond within 15 days and show the Court why it should not finalize its partial summary judgment on this issue. *See infra* Part III.

ported Fletcher's arrest. Fletcher may respond within 10 days thereafter.