**Mary ROE, Plaintiff,**

v.

**COUNTY OF LAKE et al., Defendants.**

**No. C–99–4512–BZ.**

United States District Court,
N.D. California.

July 17, 2000.

Richard J. Massa, Massa & Assoc., Lakeport, CA, for Mary Roe.

Terence J Cassidy, Kristina M. Hall, Avery E. Dority, Porter Scott Weiberg & Delehant, Sacramento, CA, for County of Lake, Rodney Mitchell.

Mark A. Jones, Jones & Dyer, Sacramento, CA, for John Casudilo.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND GRANTING LEAVE TO AMEND

ZIMMERMAN, United States Magistrate Judge.

On March 30, 2000, plaintiff Mary Roe filed her first amended complaint ("complaint") against the County of Lake, former sheriff's deputy John Caudillo, and Sheriff Rodney Mitchell seeking monetary damages and injunctive relief.[1] The gravamen of her complaint is that defendants violated her civil rights under 42 U.S.C. § 1983 and various state laws when, after coming to her home to investigate a report of domestic violence, Caudillo raped her. Plaintiff further alleges that defendants County of Lake and Sheriff Mitchell have a *de facto* policy or custom of encouraging their law enforcement officers to violate the civil rights of women. Specifically, she complains that the County and Sheriff Mitchell permitted this and other similar conduct by sheriff's deputies; failed to properly recruit, train, or discipline Caudillo or the other officers involved; and refused to prosecute her husband as part of a cover up. Defendants Lake County and Sheriff Mitchell (but not Caudillo) now move to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) the County cannot be liable because Mitchell and Caudillo acted on behalf of the State in their law enforcement capacity; (2) Mitchell is immune under the Eleventh Amendment because a sheriff is a state agent and therefore not a "person" within the meaning of section 1983; (3) plaintiff's state law violations are barred by the statute of limitations; and (4) once the federal claims are dismissed, there is no pendent party jurisdiction.[2]

A local municipality, such as a county, may be sued under section 1983 if the alleged constitutional violations were committed by its officials pursuant to a municipal policy, practice, or custom. *See Monell v. Department of Soc., Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On the other hand, a State and its officials sued in their official capacity cannot be sued for damages under section 1983 because they are not "persons" within the meaning of the statute.[3] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Defendants argue that Sheriff Mitchell performs his law enforcement

---

1. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636.

2. Dismissal is appropriate under Rule 12(b)(6) "only where it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing a motion to dismiss, the Court must assume all material allegations to be true and must construe them in the light most favorable to the nonmoving party. *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

3. Defendants have not moved to dismiss the claim for injunctive relief and conceded at the hearing that prospective relief is permitted under section 1983 even if the Sheriff is deter-

duties as an agent of the State of California and therefore is not subject to this suit, and that the County cannot be liable for his or his deputies' actions that were undertaken pursuant to their state law enforcement duties.

■ Defendants' motion is premised on *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), in which the Supreme Court held that an Alabama sheriff could not be sued under section 1983 for intimidating witnesses into making false statements and suppressing exculpatory evidence because the sheriff was exercising state authority. The Supreme Court announced two principles to guide the inquiry of whether a county sheriff is a state or county official for purposes of section 1983 liability. First, the inquiry should not be made as a categorical "all or nothing" determination, as a sheriff may act for the State and the county in different capacities. *See id.* at 785, 117 S.Ct. 1734. Second, the inquiry depends upon an analysis of state law that looks beyond how the State labels a sheriff and to the definition of a sheriff's actual functions under the relevant state law. *See id.* at 786, 117 S.Ct. 1734. After balancing the State's constitutional and statutory provisions that govern sheriffs, and analyzing the historical development of those provisions, the Court concluded that Alabama sheriffs represent the State when they execute their law enforcement duties. *See id.* at 793, 117 S.Ct. 1734.

■ Before and after *McMillian*, the Ninth Circuit has considered a California sheriff a local law enforcement agent for purposes of establishing section 1983 liability under *Monell*.[4] As I am aware of no reported case that has applied *McMillian* to the precise question that defendants' motion presents, I must conduct an independent analysis of California's constitution, statutes, and case law. *See Weiner v. San Diego County*, 210 F.3d 1025, 1029 (9th Cir.2000). As in *McMillian*, my analysis begins with the California Constitution. In *McMillian*, the Supreme Court relied heavily on two provisions of the Alabama Constitution. First, and "especially important for our purposes," is the provision in the Alabama Constitution designating a county sheriff as an executive officer. *See McMillian*, 520 U.S. at 787, 117 S.Ct. 1734. In California, a sheriff is not designated by the constitution as a member of the executive branch, which is defined in Article V, titled "Executive." Instead, sheriffs in California are defined in Article XI of the Constitution, titled "Local Government." The California Constitution recognizes two forms of local government: counties and cities, with the sheriff designated as the chief law enforcement officer of the county.[5] *See* Cal. Const. art. XI, §§ 1, 2.

---

4. Post–*McMillian: See, e.g., Robinson v. Solano County*, 00 C.D.O.S. 5735, 5737 (9th Cir. July 12, 2000); *Headwaters Forest Defense v. County of Humboldt*, 211 F.3d 1121, 1126 n. 2 (9th Cir.2000); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir.2000). No *McMillian* analysis was conducted in these cases.

Pre–*McMillian: See, e.g., Henry v. County of Shasta*, 132 F.3d 512, 517–23 (9th Cir.1997); *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir.1995); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1481–82 (9th Cir.1993); *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir.1991); *Merritt v. County of Los Angeles*, 875 F.2d 765, 770–71 (9th Cir.1989).

[mined to be a state official. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).]

5. A California county may exist as a general law county, organized in accordance with laws passed by the Legislature, or as a charter county, organized in accordance with a charter that is enacted by county voters and approved by the Legislature. To some extent, charter counties share the same benefits of home rule as charter cities. *See* Joseph R. Grodin et al., *The California State Constitution: A Reference Guide* 184–91. It is conceivable that the analysis under *McMillian* could produce different results in California depending upon whether it is applied to a general law county, a charter county, or a consolidated charter city and county, such as San Francisco. The County of Lake is a general law county.

The other provisions of the Alabama Constitution relied on by the Supreme Court are those that make a county sheriff subject to impeachment for neglect of office and that moved the authority to impeach a sheriff from a county court to the Alabama Supreme Court. *See McMillian,* 520 U.S. at 788, 117 S.Ct. 1734. By contrast, the California Constitution does not list sheriffs in Article IV, section 18, which provides for impeachment of a variety of state officers before the Legislature. Instead, the authority to impeach a sheriff in California lies with the county grand jury. *See* Cal. Gov't Code § 3060; *see also People v. Hulburt,* 75 Cal.App.3d 404, 409, 142 Cal.Rptr. 190 (1977) (sheriff is "unquestionably an officer subject to section 3060 proceedings"). Not only does the California Constitution lack the provisions most important to the Supreme Court's decision in *McMillian,* its provisions read much like those of the Alabama Constitution prior to that State's determined effort to clarify that sheriffs were acting for the State when exercising their law enforcement functions.

The Supreme Court was impressed that the impeachment provisions were added to the Alabama Constitution in 1901 as part of a deliberate effort to exert state control over local sheriffs to prevent lynchings. *See McMillian,* 520 U.S. at 788, 117 S.Ct. 1734. California has no similar constitutional history. To the contrary, the constitutional history of Article XI shows that it was designed to strengthen local government.[6] The current versions of Article XI, sections 1(b) and 4(c), which specifically require counties to have elected sheriffs, were enacted in 1978 when the voters passed Proposition 6. The ballot arguments on both sides of the Proposition

considered a sheriff to be a local law enforcement officer:

The passage of this constitutional amendment will assure all of the people in each of fifty-eight counties of this state that their chief law enforcement officer at county level, the sheriff, will continue to be directly answerable to them through the elective process.

.     .     .     .     .

... Indeed, one of the most awesome of these responsibilities is a mandate to take appropriate action when there is a break-down of law enforcement at the local level, in a municipality.[7]

While the opponents wanted to have the option of an appointed sheriff, they too saw the sheriff as a local official:

This proposed amendment to our constitution represents but one more example of the state attempting to intrude on the rights of local government and is, indeed, a violation of the basic concept of home-rule.[8]

Also critical to the Supreme Court in *McMillian* were the facts that under Alabama law, the State—not the county— would be liable for damages in a suit against a sheriff and that an Alabama county could not be liable under *respondeat superior* for a sheriff's acts. *See McMillian,* 520 U.S. at 789, 117 S.Ct. 1734 (citing *Parker v. Amerson,* 519 So.2d 442, 443–445 (Ala.1987)). Similarly, in the Ninth Circuit, a crucial factor in determining whether an individual is exercising state or local authority is "who is legally obligated to pay the judgment that is being sought." *Hyland v. Wonder,* 117 F.3d 405, 413 (9th Cir.1997) (quoting *Regents of Univ. of Cal. v. Doe,* 519 U.S. 425, 427, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)). Here, counsel for Sheriff Mitchell and Lake

---

**6.** *See* Grodin, *supra,* at 181 (discussing both the original enaction of Article XI as a reflection of legislators' mistrust of state government and the subsequent amendments that expanded local control).

**7.** *See* Argument in Favor of Proposition 6 by Robert Presley, State Senator, 34th District, and William A. Craven, Member of the Assem-

bly, 76th District, 1978 General Election Ballot Pamphlet.

**8.** *See* Argument Against Proposition 6 by Omer L. Rains, State Senator, 18th District, Howard Berman, Member of the Assembly, 43rd District, Bill McVittie, Member of the Assembly, 65th District, 1978 General Election Ballot Pamphlet.

County conceded during oral argument that any judgment plaintiff obtains would be paid from county funds. *See also* Cal. Gov't Code § 970.2. And in California, the county is liable under *respondeat superior* for a sheriff's torts of the sort alleged here. *See* Cal. Gov't Code § 815.2(a); *Robinson v. Solano County,* 00 C.D.O.S. 5735, 5737 (9th Cir. July 12, 2000) (citing *White v. County of Orange,* 166 Cal.App.3d 566, 572, 212 Cal.Rptr. 493 (1985)); *Scott v. County of Los Angeles,* 27 Cal.App.4th 125, 140, 32 Cal.Rptr.2d 643 (1994) ("Under Government Code section 815.2, subdivision (a), the County is liable for acts and omissions of its employees under the doctrine of *respondeat superior* to the same extent as a private employer.")[9]

Under California law, sheriffs are defined and regulated as county employees. Sheriffs are elected within and by the county. *See* Cal. Gov't Code § 24205. Sheriffs in California are required to attend upon and obey state courts only within their county. *See* Cal. Gov't Code § 26603. In contrast, Alabama sheriffs are subject to the supervision of any court in the State, even those outside their county. *See McMillian,* 520 U.S. at 789, 117 S.Ct. 1734 (citing Ala.Code §§ 336–22–3(1), (2)). And unlike in Alabama, where a sheriff's salary is set by the Legislature, the salary of a sheriff in California is set by the county board of supervisors. *See* Cal. Gov't Code §§ 24000, 25300.

■ The only support in the California Constitution for the proposition that sheriffs are exercising state authority is found in Article V, section 13, which grants the Attorney General a supervisory role over "every district attorney and sheriff and over such other law enforcement officers as may be designated by law." This provision was added in 1934, when the voters approved Proposition 4. As then Alameda County District Attorney Earl Warren told the voters, this amendment was designed to "address the lack of organization of our law enforcement agencies" by providing coordination and supervision by the Attorney General "[w]ithout curtailing the right of local self government." Argument in Favor of Proposition 4 by Earl Warren, District Attorney of Alameda County, 1934 General Election Ballot Pamphlet.[10]

Article V, section 13 is fleshed out in several California statutes which give the Attorney General direct supervisory power over sheriffs, including the power to require written reports concerning any investigation, detection, and punishment of crime in their jurisdiction, *see* Cal. Gov't Code § 12560; to appoint persons to perform the duties of sheriff in particular circumstances; *see* Cal. Gov't Code § 12561; and to call a conference of district attorneys, sheriffs, and police chiefs to further "uniform and adequate enforcement" of state law, *see* Cal. Gov't Code § 12524. In addition, a county board of supervisors in California is limited in its general supervisory control over the county sheriff from interfering with his power to investigate and prosecute state crimes. *See* Cal. Gov't Code § 25303. The *McMillian* Court drew support from analogous statutory provisions in Alabama in finding that Alabama sheriffs are state officials. *See McMillian,* 520 U.S. at 790, 117 S.Ct. 1734.

In California, such an analysis would prove too much, as the California Constitu-

9. *See also Aleman v. Milwaukee County,* 35 F.Supp.2d 710, 719 (E.D.Wis.1999) ("[A]ny doubt caused by conflicting 'indicators of immunity,' ... is resolved by the changes in Wisconsin law that now make the county liable for any judgment rendered against the Sheriff in his official capacity.") (quoting *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)).

10. Proposition 4 appears to have had its intended effect, judging by subsequent studies which have noted that California's law enforcement agencies are well-integrated and coordinated. *See* John P. Kenney, *The California Police,* ch. IV (1964); *see also The Police in the California Community: Report of the Attorney General's Advisory Commission on Community–Police Relations,* ch. 4 (1973). These studies underscore the functional equivalency of county sheriff departments and municipal police departments.

tion permits the Attorney General to supervise all "other law enforcement officers as may be designated by law," and California statutes treat sheriffs much like all other peace officers whose authority is fundamentally derived from and regulated by the Legislature.[11] Taken to its logical extreme, it would render *all* local law enforcement agencies in California immune from prosecution for civil rights violations and emasculate *Monell*, which preserves section 1983 liability against local governments.

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66, 109 S.Ct. 2304. The purpose of a *McMillian* analysis is to cull from cases seeking a federal remedy for civil rights violations, those in which the remedy would impugn state sovereignty. "[I]t is an 'established principle of jurisprudence' that the sovereign cannot be sued in its own courts without its consent." *Id.* at 67, 109 S.Ct. 2304. By delegating authority to a municipality, either through its charter or by

statute, a State impliedly waives a municipality's immunity from liability for the nonperformance or misperformance of its obligations. *See Owen v. City of Independence*, 445 U.S. 622, 646, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). In California, that waiver is explicit for both cities and counties. *See* Cal. Gov't .Code §§ 23004(a), 34501.

Recognizing that local police power is derived from the State, *McMillian* requires a court to analyze the delegation of that power to determine whether it was sufficiently complete such that a suit for abuse of that power is not a suit against the State.[12] It seems clear from the analysis above that California's delegation of authority to Sheriff Mitchell is sufficiently complete. It is difficult to see how a judgment against a sheriff who, as is alleged here, permits his office to violate the civil rights of women in the way he maintains his staff and sets his policies, will operate as a judgment against the State. The fact that the sheriff is subject to supervision by the Attorney General does not alter this. Whatever the reality of the functional supervision that the Attorney General exercises over local sheriffs,[13] Sheriff Mitchell

11. *See, e.g.*, Cal.Penal Code § 830.1(a) (defining the jurisdiction of peace officers, including police chiefs and sheriffs); § 832.4 (prescribing certification standards and training for all peace officers). The authority of police chiefs depends upon general law powers delegated to the cities by the State. *See* Cal. Const. art. XI, § 5; Cal. Gov't Code §§ 36501, 38630. In their capacity as enforcers of the general laws of California, police chiefs have the same authority and responsibilities as sheriffs, and are circumscribed in similar ways. *See, e.g.*, Cal. Gov't Code § 41601 (police chiefs considered sheriffs in suppression of riots and other forms of preserving the peace); Cal. Bus. & Prof.Code § 10239.4 (both sheriff and police department required to assist commissioner with seizure of real property); *see also* Cal. Const. art. XI, § 7 (neither city nor county can make or enforce laws that conflict with general laws); *see also Report of the Attorney General's Advisory Commission, supra*, at 4–2 ("[T]he basic legal foundations of police authority in California flow primarily from the State. This means that the underlying authority of all law

enforcement agencies regardless of size or location is the same.").

12. In *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Supreme Court posed a similar question to determine whether a county could be brought into federal court for violations of state law on diversity grounds. In determining that the county was not "a mere arm of the State," the Court eschewed the generalization in the California Constitution that a county is a legal subdivision of the State, and examined the substantive provisions of the California Code granting counties financial, legal, and political autonomy from the State. *See id.* at 719–21, 93 S.Ct. 1785 (collecting California statutes).

13. Although county sheriffs have been frequently sued for civil rights violations in federal court, I have found no regulations which enable the Attorney General to prohibit or remedy such violations and have found no reported case in which the Attorney General has attempted to do so. This is consistent with the skepticism expressed by Justice

is ultimately supervised in Lake County, at least for the policies at issue here. The deterrent effect of paying any judgment plaintiff may obtain will be felt in Lake County.[14] If the public is dissatisfied with the way Sheriff Mitchell treats women victims, he will either not be reelected by the voters of Lake County or he will be impeached before a Lake County grand jury. It is hard to see how any of this will violate California's sovereignty.

Rather than conduct their own analysis of California law, the moving defendants rely almost exclusively on two cases, neither of which is directly on point. In *Pitts v. County of Kern*, 17 Cal.4th 340, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998), the California Supreme Court held that district attorneys were state officers and not subject to section 1983 liability for acts taken in prosecuting criminal violations of state law and in training their employees in those areas.[15] *Pitts* does not analyze the office of a California sheriff, presumably because the Kern County Sheriff, also a defendant in *Pitts*, did not move for summary judgment, as did the District Attorney, and was granted a nonsuit at trial. Instead, the plaintiffs in *Pitts*, faced with over 100 years of state cases recognizing that a district attorney who prosecutes criminal actions in the name of the People of the State of California is exercising state authority, "to a certain extent, conceded" that point. *See Pitts*, 17 Cal.4th at 351, 70 Cal.Rptr.2d 823, 949 P.2d 920.

A prosecutor is absolutely immune, under common law and by California statute, from torts arising out of prosecuting criminal violations. *See Pitts*, 17 Cal.4th at 360 n. 7, 70 Cal.Rptr.2d 823, 949 P.2d 920 (discussing California Government Code section 821.6). Such immunity assures that the fear of suits from acquitted defendants does not divert prosecutors from enforcing the law. *See id.* at 350–51, 70 Cal.Rptr.2d 823, 949 P.2d 920 (citing *Imbler v. Pachtman*, 424 U.S. 409, 424–25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). The policy challenged here is not how the sheriff, let alone the district attorney, enforces the law, but how the sheriff treats female crime victims. Sheriff Mitchell is sued not by an acquitted defendant, but by a victim of a reported crime who alleges she was raped by a deputy sheriff during the investigation. Finding that a sheriff does not set state policy if he encourages mistreatment of women who are victims of crime or does not adequately prepare his staff to deal with women who are victims of spousal abuse will not burden any state law enforcement policy of the sort that concerned the Supreme Court in *Pitts*.[16]

Mosk, a former Attorney General, in his dissent in *Pitts v. County of Kern*, 17 Cal.4th 340, 70 Cal.Rptr.2d 823, 949 P.2d 920 (1998), over the weight to be given to the constitutional provision for Attorney General supervision: "[T]he fact that the Attorney General has authority over all law enforcement officers, in a general constitutional sense, does not negate the de facto and de jure autonomy of a district attorney's office"—and, under the same reasoning, of a sheriff's department. *Id.* at 368, 70 Cal.Rptr.2d 823, 949 P.2d 920.

**14.** The Supreme Court has consistently held that the Eleventh Amendment only protects a State from liability that would be paid out of state funds. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)); *cf. Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (permitting injunctive relief), *and Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("[T]he Eleventh Amendment does not

erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.").

**15.** Defendants mistakenly argue that the Ninth Circuit's decision in *Weiner* is controlling. *Weiner* considers only the issue of whether district attorneys are state officials under *McMillian*, relied heavily on *Pitts*, and is therefore distinguishable for the reasons discussed here.

**16.** A fundamental distinction between the policy of the district attorney challenged in *Pitts* with the policy of the sheriff challenged here is that under California law a county could never be liable in *respondeat superior* for the actions of a district attorney in prosecuting a crime, but will always be liable in *respondeat superior* for the actions of a sheriff of the sort alleged here. *Compare Pitts*, 17 Cal.4th at 360 n. 7, 70 Cal.Rptr.2d 823, 949 P.2d 920, *with White v. County of Orange*, 166 Cal. App.3d 566, 571–72, 212 Cal.Rptr. 493 (1985).

In *County of Los Angeles v. Superior Court,* 68 Cal.App.4th 1166, 80 Cal.Rptr.2d 860 (1998) (*Peters*), a California court of appeal held that a county sheriff is not subject to section 1983 liability for torts committed in his role as jailer. *Peters,* relying almost entirely on the holding in *Pitts,* found sufficient analogy between a sheriff and a district attorney under California law that it did not undertake its own analysis of the factors discussed above which distinguish a California sheriff from a district attorney or from an Alabama sheriff.[17] Because a determination of the sheriff's section 1983 liability is a question of federal, not state law, *see Owen v. City of Independence,* 445 U.S. 622, 647 n. 30, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980),[18] to the extent that *Peters* invites a ruling that Sheriff Mitchell is a state actor, I decline the invitation.[19]

For the foregoing reasons, defendants' motion to dismiss the claims under section 1983 for damages and injunctive relief against Sheriff Mitchell in his official capacity are **DENIED.** In addition, the motion to dismiss the claim against Sheriff Mitchell in his individual capacity is **DE-NIED.** Although *respondeat superior* liability is not available under section 1983, the amended complaint alleges direct liability against Sheriff Mitchell for his failure to instruct, supervise, control, and discipline officers who were violating the civil rights of women. Accordingly, the allegations state a claim sufficient to survive a motion to dismiss.

Because the complaint survives against the sheriff in his official capacity as the chief policymaker for the county, the County is a redundant defendant and is therefore **DISMISSED.** However, plaintiff is granted leave to amend her complaint against the County in light of her state law allegations that could give rise to *respondeat superior* liability. Any amended complaint must be filed by no later than **August 1, 2000.**

Defendants argue that the state law claims are barred by the statute of limitations. Under California law, prior to filing a lawsuit for money damages against a local public entity, a plaintiff must present the claim to that entity. *See* Cal. Gov't Code § 905. If the claim is rejected, plain-

---

17. Other courts that have applied *McMillian* to the role of California sheriffs in other capacities have come to inconsistent conclusions. *Compare Von Colln v. County of Ventura,* 189 F.R.D. 583, 601–02 (C.D.Cal.1999) (sheriff is a county official when using a restraining chair in the operation of county jails), *and Granville v. Plummer,* 1999 WL 66513, at *6 (N.D.Cal. Feb.8, 1999) (sheriff is a county official when taking care of federal prisoners held in the county jail), *and Rhodes v. Alameda County Sheriff's Dep't,* 1998 WL 846594, at *4 n. 6 (N.D.Cal. Nov.25, 1998) (defendants had not met burden of showing that a sheriff in California acts pursuant to state authority), *with Smith v. County of San Mateo,* 1999 WL 672318, at *7 (N.D.Cal. Aug.20, 1999) (sheriff is a state official when acting as a jailer), *and Boakye–Yiadom v. City, County of San Francisco,* 1999 WL 638260, at *3 (N.D.Cal. Aug.18, 1999) (sheriff is a state official when providing security for superior court), *and Hawkins v. Comparet–Cassani,* 33 F.Supp.2d 1244, 1253 (C.D.Cal.1999) (sheriff is a state policymaker when providing security to a state court). Those cases that find that sheriffs are state actors tend to adopt the analysis in *Pitts* and *Peters.*

18. "Municipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal law."

19. With the exception of courts largely in the Fourth Circuit, most courts that have conducted *McMillian* analyses have, as the dissent in *McMillian* predicted, narrowly confined *McMillian* to the unique nature of county government in Alabama. *See, e.g., De-Genova v. Sheriff of DuPage County,* 209 F.3d 973, 975–77 (7th Cir.2000) (Illinois); *Franklin v. Zaruba,* 150 F.3d 682, 685 (7th Cir. 1998) (Illinois); *Porche v. St. Tammany Parish Sheriff's Office,* 67 F.Supp.2d 631, 633–35 (E.D.La.1999); *Abraham v. Piechowski,* 13 F.Supp.2d 870, 879 (E.D.Wis.1998); *Morgan v. Rossi,* 1998 WL 175604, at *9–12 (E.D.Pa. Apr.15, 1998); *Hamilton v. Stafford,* 1997 WL 786768, at *1 (N.D.Miss.1997).

*But see Knight v. Vernon,* 214 F.3d 544, 552 (4th Cir.2000) (North Carolina); *Fletcher v. Screven County,* 92 F.Supp.2d 1377, 1379–80 (S.D.Ga.2000); *Wall v. Sloan,* 1998 WL 54938, *1 (4th Cir. Feb.11, 1998) (South Carolina).

tiff has six months from the date such notice of rejection is delivered or deposited in the mail to file a complaint. *See* Cal. Gov't Code § 945.6. On June 29, 1999, plaintiff received a notice of rejection of her state tort claim. On November 23, 1999, she filed her original complaint in federal court against defendants for violation of civil rights under section 1983. On March 30, 1999, plaintiff filed her first amended complaint in federal court, specifying for the first time that she was suing under California Civil Code 51.7, and specifically identifying other state law theories. Defendants argue that these state theories are barred because they were filed after the six month statute of limitations.

 "The statute of limitations does not bar an amended complaint alleging new causes of action if it rests on the same facts as the original complaint and refers to the same accident and same injuries as the original complaint." *Goldman v. Wilsey Foods, Inc.*, 216 Cal.App.3d 1085, 1094, 265 Cal.Rptr. 294 (1989). In this case, the original complaint details almost verbatim the same factual allegations that are found in the amended complaint. Moreover, the original complaint alleges violations of plaintiff's federal *and* state civil and constitutional rights, and lists state tort theories of liability, including a claim for *respondeat superior* against the County which is only available under state law. The only alleged defect in the original complaint is the failure to identify California Civil Code section 51.7 as a cause of action. I find that this defect is not fatal in light of liberal notice pleading requirements in federal court, and because the amended complaint alleges this new cause of action based on the facts found in the original complaint.

Defendants' motion to dismiss the state law claims on statute of limitations grounds is therefore **DENIED**. Because the court retains jurisdiction over several of the federal causes of action, defendants'

motion to dismiss the state law claims for no pendent jurisdiction is **DENIED**.