[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2002
THOMAS K. KAHN
CLERK

No. 01-13151
_____

D. C. Docket No. 99-0132-CV-CC-1

BRIAN L. GRECH,

Plaintiff-Appellant,

versus

CLAYTON COUNTY, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 19, 2002)**

Before BARKETT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

In this § 1983 action, Appellant-Plaintiff Brian L. Grech ("Grech") appeals

the district court's grant of summary judgment to the defendant Clayton County,

Georgia ("Clayton County"). Grech's complaint asserts that he was falsely

arrested in 1998 on an expired bench warrant from 1985 and that his false arrest was caused by the Clayton County Sheriff's Department's custom and policy of permitting invalid criminal warrants to remain on certain computer databases and its failure to adequately train its operators in this regard.

Without addressing the merits of Grech's constitutional claims, the district court granted summary judgment to the defendant Clayton County, concluding that Clayton County could not be liable under § 1983 in any event because the Clayton County Sheriff is not a county policymaker when performing his law enforcement duties. The parties do not dispute that the Sheriff is a final policymaker but disagree regarding whether the Sheriff acts for the state or the county with respect to the maintenance and recall of criminal warrants. Because our precedent has treated § 1983 suits against Georgia sheriffs as suits against counties, we must likewise treat the Clayton County Sheriff as representing Clayton County and thus as a county policymaker. Therefore, we reverse the grant of summary judgment to Clayton County and remand to the district court for consideration of the merits of Grech's constitutional claims.

## I. BACKGROUND

We first discuss Grech's 1985 arrest that resulted in a bench warrant and then his 1998 arrest on that warrant.

2

## A.    Grech's 1985 Arrest

On March 16, 1985, law enforcement officers of Clayton County, Georgia, arrested Grech for DUI and speeding.   The following morning, he was released from jail on bond and was given a court date of June 13, 1985, for both charges. On June 13, 1985, Grech failed to appear in the Clayton County state court, mistakenly believing that he could handle the charges from his residence in Kentucky.  Consequently, on June 24, 1985, the Clayton County state court issued a bench warrant that revoked Grech's bond and authorized law enforcement officers to arrest Grech.  That bench warrant on its face referenced the two case numbers for the DUI and speeding charges and stated that Grech had failed to appear in court as required on June 13, 1985.[1]

On June 24, 1985, the bench warrant was entered into the Criminal Justice Information System ("CJIS"), which is an in-house computer database shared by the Clayton County Sheriff's Department and the courts.  On July 5, 1985,

_____

[1] A defendant who fails to appear in court may be charged with failure to appear under O.C.G.A. § 40-13-63 or bail-jumping under O.C.G.A. § 16-10-51. The pre-printed type at the top of the bench warrant states "Bench Warrant Failure to Appear," but does not reference either statute.  The parties dispute whether the 1985 bench warrant was sufficient under Georgia law for a separate charge of failure to appear and whether that charge was effectively resolved when Grech pled to the DUI and speeding charges.  The district court did not address the merits of Grech's constitutional claims, and we need not decide these issues to resolve the § 1983 policymaker question in this appeal.

employees of the Clayton County Sheriff's Department entered the bench warrant into the Georgia Crime Information Center Network ("GCIC"). The GCIC is a statewide criminal computer database administered by the State of Georgia through the GBI and accessible by law enforcement agencies throughout Georgia. Both the GCIC and the CJIS contain information on "wanted" individuals who may be arrested by law enforcement.

In addition to issuing a bench warrant, the Clayton County state court sent Grech a letter informing him that he had missed his court date and that his appearance in court was necessary. Soon thereafter, Grech voluntarily returned to Georgia for his court appearance. On July 12, 1985, Grech entered a plea of nolo contendere on the speeding ticket and pled guilty to DUI in the Clayton County state court. As a result, Grech was fined and sentenced to twelve months of probation. At his court hearing, the state court judge reprimanded Grech for missing his previous court date.

Grech alleges that he was not informed that a bench warrant had been issued by the state court only a few weeks earlier. Grech assumed that the charges against him were taken care of after he entered the pleas and paid his fine. Despite the dispositions of the offenses underlying the bench warrant, the Clayton County Sheriff's Department failed to remove the bench warrant from the GCIC and CJIS

4

systems.  Instead, the bench warrant remained active for thirteen years on both the GCIC and CJIS until July 3, 1998.[2]

**B.    The GCIC System**

The Clayton County Sheriff's Department has employees trained as terminal operators who enter criminal warrants into the GCIC system and who are instructed to validate the outstanding warrants in the GCIC system annually to safeguard against invalid warrants remaining on the system.   As part of the validation process, terminal operators are supposed to contact the entity that issued the warrant to verify that the warrant has not been recalled or withdrawn.  The State of Georgia requires that terminal operators complete the GCIC training workbooks and certification requirements.   The terminal agency coordinator is an employee of the Sheriff's Department who has completed advanced GCIC training and certification requirements.  The terminal agency coordinator supervises the

---

[2] The bench warrant referencing the DUI and speeding charges was not cleared from the CJIS until July 3, 1998.  Grech's CJIS entry, however, indicated that on March 16, 1985, Grech pled guilty to the DUI charge and entered a nolo contendere plea on the speeding charge.  In their depositions, both Captain Glaze and warrant officer Melba Hensel indicated that there may have been an error in Grech's CJIS entry because March 16, 1985, was the date on which the DUI and speeding citations were given, rather than the date on which Grech entered his pleas.

training and certification of terminal operators and acts as a liaison between the GCIC and Sheriff's Department.

In addition, the GBI audits law enforcement agencies, such as the Clayton County Sheriff's Department, every two years to ensure compliance with the GCIC rules and regulations. Auditors obtain a statistical sample of active wanted, missing person, and stolen vehicle files from the audited agency and review its files for compliance with the GCIC rules and regulations, including a review of the agency's training records and validation procedures. Grech contends that the audit reports regarding the Clayton County Sheriff's Department for 1996 and 1998[3] demonstrate that the Sheriff's Department performed poorly in many of the areas reviewed by auditors, particularly with respect to the training of its GCIC terminal operators and the validation of the GCIC entries to ensure that only accurate, valid information is maintained on the GCIC system.

## C. Grech's 1998 Arrest

On July 3, 1998, Grech was stopped by a City of Fayetteville police officer because one of his car's tail lights was not functioning. When the officer ran a routine check on Grech's driver's license, the GCIC records revealed an

---

[3] The Sheriff's Department does not have records of audits conducted prior to 1994, and the records of the 1994 audit are incomplete.

outstanding bench warrant dating back to 1985. Grech tried to explain to the

officer that there must be some mistake if the records showed an outstanding

warrant since he had taken care of the 1985 charges. The police officer requested

advice from the Clayton County Sheriff's Department on how to proceed. After

verifying its records, the Clayton County Sheriff's Department responded that

Grech's 1985 bench warrant was still active. Thereafter, the police officer arrested

Grech.

Initially transported to the Fayette County jail, Grech was later transferred to

the Clayton County jail where he was released on a bond of $1370.00. Grech spent

nine hours in jail. On August 17, 1998, a Clayton County judge returned the

posted bond of $1370.00 to Grech. The Clayton County Sheriff's Department,

however, has never admitted that it erred in not withdrawing Grech's 1985 bench

warrant from the GCIC and CJIS systems.[4]

## D. Procedural History

On March 20, 1999, Grech brought a § 1983 action against Clayton County,[5]

alleging that his civil rights were violated when he was arrested in 1998 pursuant

---

[4] See supra note 1.

[5] Neither the Clayton County Sheriff in his official capacity nor any individual law enforcement officer was named as a defendant in this case.

to a 1985 bench warrant that Clayton County had failed to recall.   Grech's complaint alleged that the false arrest was an unreasonable search and seizure violating the Fourth Amendment of the United States Constitution and Article 1, Section 1, Paragraph 13 of Georgia Constitution and a due process violation under the Fourteenth Amendment of the United States Constitution and Article 1, Section 1, Paragraph 1 of the Georgia Constitution.   In addition, Grech claimed that Clayton County committed numerous torts, including intentional infliction of emotional distress, false arrest, and false imprisonment.

In the portion of the complaint relevant to the alleged federal constitutional violations under § 1983, Grech stated that "Defendant's failure to ensure adequate training, policies, procedures, practices, and customs regarding the use of the GCIC Computer System constituted a pattern or practice of deliberate indifference and led directly and foreseeably to the arrest of the Plaintiff."   In addition, Grech claimed that Clayton County had a custom and policy of permitting errors in warrant information on the GCIC and of failing to prevent the posting and maintenance of invalid or unconstitutional criminal warrants and warrant information on the GCIC.

On February 3, 2000, Clayton County moved for summary judgment on the state and federal claims.   In its summary judgment motion, Clayton County

asserted that it could not be held liable for the actions of the Clayton County Sheriff or his deputies because the Sheriff was an agent of the state, not the county, and, in any event, Grech had failed to produce evidence of an unconstitutional policy or custom which was the moving force behind any alleged constitutional violation. With respect to the state law claims, Clayton County argued they were barred by the doctrine of sovereign immunity.[6]

On August 22, 2000, the district court granted summary judgment in favor of Clayton County on all claims. Relying on Fletcher v. Screven County, 92 F. Supp.2d 1377 (S.D. Ga. 2000), the district court concluded that Clayton County may not be liable under § 1983 for the alleged unconstitutional conduct of the Clayton County Sheriff's Department. The district court determined that Clayton County is liable for the actions of its Sheriff only if the Sheriff's actions constitute county policy. The court recognized that the pivotal issue is whether the Sheriff acts for the county or the state in making law enforcement policy. The court concluded that "under Georgia law, Clayton County does not control or direct the Clayton County Sheriff in the performance of his law enforcement duties" and that the County particularly does not control or direct the Sheriff's Department as to its

---

[6]In his brief in opposition to Clayton County's summary judgment motion, Grech did not oppose Clayton County's motion for summary judgment with respect to the state law claims.

9

compliance with GCIC rules and regulations or the training of its personnel in that regard. Thus, the district court indicated that Clayton County could not be liable because the Sheriff was not a final policymaker for Clayton County when performing these law enforcement duties.

On May 8, 2001, the district court denied Grech's motion for reconsideration and motion to vacate judgment and add or substitute a necessary party defendant. The district court's order reiterated that "Clayton County cannot be liable under § 1983 for the alleged unconstitutional conduct of the Sheriff or his employees." Grech timely appealed.

## II. DISCUSSION

It is well-settled that a county's liability under § 1983 may not be based on the doctrine of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "Instead, it is when execution of a [county's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury that the [county] as an entity is responsible under § 1983." See id. Therefore, a necessary step in establishing a county's § 1983 liability is identifying "'those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular

10

constitutional or statutory violation at issue.'" McMillian v. Monroe County, 520 U.S. 781, 785 (1997) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

On appeal, the parties do not dispute that the Sheriff of Clayton County is a final policymaker as to his law enforcement duties regarding the maintenance and recall of criminal warrants. They also recognize that Clayton County may be liable in this § 1983 action only if the Sheriff is a final policymaker acting for the county. See Turquitt v. Jefferson County, 137 F.3d 1285, 1291-92 (11th Cir. 1998) (en banc). However, the parties dispute what entity the Sheriff represents when performing his law enforcement duties. Specifically, they dispute whether the Sheriff acts for the state or the county with respect to the maintenance and recall of criminal warrants.

This Court has never directly examined whether Georgia sheriffs are county policymakers when performing their law enforcement duties. However, applying the well-established rule that an official capacity suit against a governmental officer is equivalent to a suit against the entity of which the officer is an agent, this Court in prior § 1983 cases has summarily treated official capacity suits against Georgia sheriffs as suits against their respective counties. See Wayne v. Jarvis, 197 F.3d 1098, 1105-06 (11th Cir. 1999) (stating that the plaintiff's § 1983 claims

11

against the sheriff in his official capacity stated claims against the county even though the county itself was not sued and proceeding to address the merits of the constitutional claims against the county); Alexander v. Fulton County, 207 F.3d 1303, 1322 & n.14 (11th Cir. 2000) (observing that the plaintiffs' suit against the sheriff in her official capacity is the functional equivalent of suing the county, but refraining from addressing liability under § 1983 because "Title VII provide[d] an alternative basis for liability").

Necessarily implicit in this Court's treatment of § 1983 official capacity suits against Georgia sheriffs as suits against counties is that the sheriff is acting for the county. Although the underlying policymaker question was not analyzed in these earlier § 1983 decisions, we are bound by the holding of the first panel of this Court to address an issue of law, unless and until that holding is overruled en banc or by the Supreme Court. See, e.g., Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8, 1302-03 (11th Cir. 2001); Turner v. Beneficial Corp., 236 F.3d 643, 648-50 (11th Cir. 2000), vacated by 242 F.3d 1023 (11th Cir. 2001) (en banc); United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993). Therefore, under our prior panel precedent rule, we must treat Georgia sheriffs as representing counties and thus as county policymakers with respect to their law enforcement duties. Accordingly, we conclude that the district court erred in holding that the Sheriff of

12

Clayton County is not a county policymaker and that Clayton County may never be liable in a § 1983 action for the Sheriff's actions.

## III. CONCLUSION

We reverse the district court's grant of summary judgment to Clayton County with respect to Grech's § 1983 claims.[7] Because the district court did not consider the merits of Grech's constitutional claims, we remand to the district court for consideration of Grech's claims.

REVERSED and REMANDED.

---

[7]As to the district court's grant of summary judgment with respect to Grech's state law claims, Grech does not challenge this portion of the district court's order on appeal. Thus, we address only Grech's § 1983 claims.

13

HULL, Circuit Judge, specially concurring:

I concur in the majority opinion in full and follow our precedent, but I question that precedent for the reasons stated in <u>Manders v. Lee</u>, No. 01-13606, ___ F.3d ___(11th Cir. March 14, 2002).