PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/08/99
THOMAS  K. KAHN
CLERK**

_____

No. 97-9152

_____

D.C. Docket No. 1:95-CV-1323-ODE

FRANK WAYNE,

Plaintiff - Appellant,

versus

PAT JARVIS, Sheriff,
DEKALB COUNTY SHERIFF
DEPARTMENT, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 8, 1999)**

Before CARNES, Circuit Judge, HILL, Senior Circuit Judge, and HOEVELER*,
Senior District Judge.

_____
*Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida,
sitting by designation.

CARNES, Circuit Judge:

After being beaten by his fellow inmates at the DeKalb County Jail, Frank Wayne filed suit against: DeKalb County Sheriff Pat Jarvis in both his individual and official capacities; the DeKalb County Sheriff's Department (the "Sheriff's Department"); and seven "John Doe" deputy sheriffs in both their individual and official capacities. Pursuant to 42 U.S.C. § 1983, Wayne alleged violations of his Eighth and Fourteenth Amendment rights, as well as state law violations.

By the time Wayne discovered the identity of the deputy sheriffs he wanted to sue, the statute of limitations had run. The district court granted Wayne's motion to amend his complaint to add those deputies' names in place of the "John Doe" defendants, but thereafter granted the named deputies' motion to dismiss on statute of limitations grounds. Wayne contends that ruling was error, a contention that raises issues involving the use of "John Doe" defendants to stave off the statute of limitations and also involving the relation back doctrine of Federal Rule of Civil Procedure 15(c).

The district court also entered summary judgment for the Sheriff's Department and the Sheriff in his official capacity based upon its conclusion that Wayne had failed to bring forward sufficient evidence to create a genuine issue of material fact concerning his theory of liability that there was a custom or practice of housing professed homosexual, bisexual, HIV-positive, and AIDS-positive inmates in the same

dormitory regardless of their violent propensities.[1] Wayne contends that he proffered sufficient evidence to survive summary judgment on this issue.

Finally, the district court denied Wayne's motion for leave of court to depose the classification officer who completed the form which resulted in Wayne being placed in the dormitory in question. Wayne contends that the testimony of that officer might have helped him establish the existence of a custom or policy.

For reasons we will discuss, we affirm all three of the district court's challenged rulings.

## I.  BACKGROUND

### A.  FACTS

Wayne was incarcerated at the DeKalb County Jail in 1993. While he was in a holding cell awaiting his housing assignment, another inmate told him that he would be placed in Dormitory E-2-A ("E-2-A"), a medium-security dorm, if he said he was homosexual. On May 19, 1993, Officer L.J. Roscoe, a classification officer, interviewed Wayne to determine his housing assignment. Desiring to be placed in the E-2-A dorm, Wayne told Officer Roscoe (falsely, he now says) that he was bisexual, and Officer Roscoe indicated on the inmate classification form that Wayne required

---

[1]The district court also entered summary judgment for the Sheriff in his individual capacity, but Wayne has not appealed that part of the judgment.

special housing "due to sexual preference." Wayne was placed in E-2-A, where he wanted to be.

On June 8, 1993, Wayne was attacked by Corey Baker while both were housed in E-2-A. Wayne was taken to the staff nurse, who found no injuries, and was returned to E-2-A. Upon his return, Wayne was attacked by four other inmates, including Nick Tanner and Thomas Loyal but not including Corey Baker. Eventually, seven deputy sheriffs arrived to break up the fight and defuse the situation by removing Wayne from E-2-A. When the deputy sheriffs led Wayne back into E-2-A to identify his attackers, Loyal began beating on Wayne again; the deputy sheriffs eventually regained control of the situation. Wayne alleges that these attacks caused continuing back and neck pain, limited his ability to work and function physically, and resulted in mental and emotional trauma.

## B. PROCEDURAL HISTORY

On May 23, 1995, Wayne filed a pro se complaint against Sheriff Pat Jarvis in both his individual and official capacities, the DeKalb County Sheriff's Department, and "Seven Unknown Deputy Sheriffs"[2] in both their individual and official

---

[2]Wayne used the terms "Seven Unknown Deputy Sheriffs" and "John Does" interchangeably throughout his complaint. For simplicity, and because it more commonly appears in the case law, we will hereafter use the term "John Does."

4

capacities, alleging that they had violated his Eighth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, and that they had violated state law.  Because the assaults took place on June 8, 1993, the two-year statute of limitations for this § 1983 claim expired on June 8, 1995.  See Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986) (two-year statute of limitations for

§ 1983 actions originating in Georgia). Wayne moved to proceed in forma pauperis, which delayed service of process on the specifically identified defendants -- Sheriff Jarvis and the Sheriff's Department -- until July 6, 1995.  Wayne did not serve process on the unidentified deputy sheriffs at the same time because he did not know their identities.

On August 8, 1995, Sheriff Jarvis timely filed his answer to Wayne's first set of mandatory interrogatories, and that answer identified eight individual deputies as potential witnesses:  Ricky L. Long, Shanton Benjamin Hines, Charlton L. Bivins, Darryl L. Tutt, Timothy F. Melton, William Winston, Jr., Kenneth Demetrius Allen, and Darren W. Benedict.   On September 5, 1995, Wayne moved to amend his complaint by adding those eight specific deputies as parties in place of the seven "John Doe" deputy sheriffs referred to in the original complaint.  On October 27,

1995, the district court granted that motion. By December 8, 1995, Wayne had served all eight of the individual deputy sheriffs with the amended complaint.

All of the defendants moved for summary judgment. On April 12, 1996, the district court denied summary judgment for the deputy sheriff defendants on Wayne's § 1983 claim that they failed to protect him from injury in violation of the Eighth and Fourteenth Amendments. In addition, the court denied the deputy sheriffs' claim that they were entitled to qualified immunity on Wayne's § 1983 claims against them in their individual capacities. The court did grant summary judgment for all of the defendants on Wayne's claims of: (1) inadequate medical treatment; (2) failure to maintain an adequate racial balance in the prison; and (3) violations of state law.[3]

On June 14, 1996, the individual deputy sheriff defendants moved to dismiss all of Wayne's remaining claims against them because he had failed to serve them with the complaint or amended complaint before the statute of limitations ran. On December 17, 1996, the district court granted their motion to dismiss.

The remaining defendants – Sheriff Jarvis in both his individual and official capacities and the Sheriff's Department – then filed their second motion for summary judgment. Before the district court ruled on that motion, Wayne filed a motion for

---

[3] Wayne does not appeal any of these rulings.

leave of court to depose Officer L.J. Roscoe, arguing that Roscoe, who had completed Wayne's Inmate Classification Screening Form, could testify about inmate classification policies and procedures. On September 16, 1997, the district court granted summary judgment in favor of the Sheriff's Department and Sheriff Jarvis in his official capacity on Wayne's § 1983 claim, ruling that Wayne "ha[d] not presented sufficient evidence to establish that Defendants employed a practice or custom of housing professed homosexual, bisexual, and HIV and AIDS positive inmates in dormitory E-2-A regardless of the violent propensities of such inmates." The district court also denied Wayne's motion for leave to depose Officer Roscoe.[4]

## II. DISCUSSION

Wayne puts forward three main contentions in this appeal. First, he contends that the district court erred in granting the deputy sheriffs' motion to dismiss, because under Federal Rule of Civil Procedure 15(c) his amended complaint should be held to relate back to his original complaint, which had been filed within the statute of limitations. Second, Wayne contends that the district court erred in granting summary judgment in favor of Sheriff Jarvis in his official capacity and in favor of the Sheriff's Department, because he raised a genuine issue of material fact as to whether they had

---

[4] As noted above, see note 1 supra, the court also granted summary judgment in favor of Sheriff Jarvis in his individual capacity. Wayne does not appeal that ruling.

7

a practice or custom of housing professed homosexual, bisexual, HIV-positive, and AIDS-positive inmates in the same dormitory regardless of their propensity for violence. Third, Wayne contends that the district court erred in denying him leave to depose Officer Roscoe on the custom or policy issue before it ruled on the summary judgment motion. We address each contention in turn.

## A. DID THE DISTRICT COURT ERR IN GRANTING THE MOTION TO DISMISS FILED BY THE DEPUTY SHERIFFS?

The district court dismissed Wayne's claims against the individual deputy sheriffs because it concluded that his amended complaint, which he filed after the statute of limitations had expired, did not relate back to his original complaint under Federal Rule of Civil Procedure 15(c). We review the district court's application of Rule 15(c) for an abuse of discretion. See Andrews v. Lakeshore Rehabilitation Hosp., 140 F.3d 1405, 1409 n.6 (11th Cir. 1998). We find none here.

More than three months after filing his initial complaint, and almost three months after the expiration of the statute of limitations, Wayne filed a motion to amend his initial complaint by replacing the seven "John Doe" deputy sheriffs with the eight specifically-named deputy sheriffs. We agree with the district court's conclusion that Wayne's amendment to replace the "John Does" with specifically-named defendants constitutes a change in the parties sued. See Barrow v.

Wethersfield Police Dep't, 66 F.3d 466, 468 (2d Cir. 1995) ("We have stated that it is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.") (quotations and citation omitted), modified, 74 F.3d 1366 (2d Cir. 1996); Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996) ("Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties.").

Because Wayne changed the parties being sued after the statute of limitations had expired, his claim against the belatedly-named deputy sheriffs is barred unless he can demonstrate that under Rule 15(c) the amended complaint naming them relates back to the original complaint, which was filed just before the statute ran.  The part of Rule 15(c) upon which Wayne relies states:

> **Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed R. Civ. P. 15(c)(3) (emphasis added). The district court ruled that Wayne's lack of knowledge regarding the identities of the deputy sheriff defendants did not constitute a "mistake concerning the identity of the proper party" for the purposes of Rule 15(c)(3)(B), and therefore that his amended complaint did not relate back. Wayne argues that his lack of knowledge is the equivalent of a "mistake" and therefore satisfies the Rule 15(c)(3)(B) requirement.

We agree with the district court that Wayne's lack of knowledge regarding the identities of the deputy sheriffs was not "a mistake concerning the identity of the proper party."[5] The drafters of Rule 15(c)(3) included the mistake proviso, as the commentary explains, in order to resolve "the problem of a misnamed defendant" and allow a party "to correct a formal defect such as a misnomer or misidentification." Fed R. Civ. P. 15(c)(3), Advisory Committee Notes to 1991 Amendment. As the Second Circuit observed, "[t]his commentary implies that the rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." Barrow, 66 F.3d at 469. Because Wayne's lack of knowledge was not an error, a

---

[5]We discuss only the mistake requirement of Rule 15(c)(3), because where that showing is not made there can be no relation back regardless of whether other requirements, such as notice and lack of prejudice to the joined party, are met.

misnomer, or a misidentification, his amendment does not come within Rule 15(c)(3)(B). While we have stated that "we read the word 'mistake' in Rule 15(c) liberally," Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1258 n.9 (11th Cir. 1983), we do not read the word "mistake" to mean "lack of knowledge." For these purposes, ignorance does not equate to misnomer or misidentification.

Our interpretation of the rule is consistent with the decisions of four other circuits which have held that an amended complaint replacing a "John Doe" defendant with that defendant's correct name does not relate back under Rule 15(c)(3). See Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995) ("His amended complaint . . . did not correct a mistake in the original complaint, but instead supplied information Barrow lacked at the outset. Since the new names were added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met."), modified, 74 F.3d 1366 (2d Cir. 1996); Jacobsen v. Osborne, 133 F.3d 315, 321 (5th Cir. 1998) ("[F]or a 'John Doe' defendant, there was no mistake in identifying the correct defendant; rather, the problem was not being able to identify that defendant"); Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996) (changing "John Doe" to named party did not "satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B)"); Worthington v. Wilson, 8 F.3d 1253, 1257 (7th Cir.

11

1993) ("Because Worthington's failure to name Wilson and Wall was due to a lack of knowledge as to their identity, and not a mistake in their names, Worthington was prevented from availing himself of the relation back doctrine of Rule 15(c).").[6] But see Varlack v. SWC Carribean, Inc., 550 F.2d 171, 174-75 (3d Cir. 1977) (implicitly holding in a "John Doe" caption case that lack of knowledge of identity satisfies the mistake requirement of Rule 15(c)).

Wayne contends that a different application of the relation back rule should apply to him because he filed the complaint as a pro se litigant, and the complaints of pro se litigants should be liberally construed. See Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990) ("In the case of a pro se action, moreover, the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers."). But the problem here is not one of construction; instead, the problem is one of lack of compliance with a deadline imposed by law. Liberal construction does not mean liberal deadlines. See Garvey v. Vaughn, 993 F.2d 776, 780 (11th Cir. 1993) (noting that Supreme Court decision at issue had not "create[d] an exception for a pro se inmate to evade time requirements."). In this case, Wayne's problem was not

---

[6]Our decision in Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253 (11th Cir. 1983), is not to the contrary. That case did not involve "John Doe" defendants or lack of knowledge on the plaintiff's part as to the identity of the defendant it wished to sue. See id. at 1256-58.

12

that he drafted his complaint without a lawyer, but that he drafted and filed it close to the expiration of the statute of limitations and thereby waited too long before setting about to find crucial information he needed to make his claim against the deputies. Wayne bears the consequences of his own delay. Had he filed earlier, he could have learned the deputy sheriffs' identities in time to amend his complaint before the statute of limitations ran.

Finally, Wayne argues that the district court should have equitably tolled the statute of limitations, because the other defendants prevented him from learning the identities of the deputy sheriffs before the statute had expired. The facts disprove this argument. Wayne filed his complaint on May 23, 1995, and the statute of limitations expired on June 8, 1995, just sixteen days later. Wayne did not serve the complaint on any of the defendants until July 6. Therefore, it was not the actions of the other defendants that prevented Wayne from learning the identities of the deputy sheriffs until it was too late. It was Wayne's own dilatoriness. Accordingly, the district court did not err in granting the deputy sheriffs' motion to dismiss.

B. DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF SHERIFF JARVIS IN HIS OFFICIAL CAPACITY AND IN FAVOR OF THE SHERIFF'S DEPARTMENT?

13

The district court granted summary judgment in favor of Sheriff Jarvis in his official capacity and in favor of the Sheriff's Department on Wayne's claim that his injuries were caused by their custom or policy of housing professed homosexual, bisexual, HIV-positive, and AIDS-positive inmates in dormitory E-2-A regardless of the inmates' propensity for violence. Although Wayne did not sue DeKalb County itself, his claim against Sheriff Jarvis in his official capacity is a claim against DeKalb County ("the County"). See Pompey v. Broward County, 95 F.3d 1543, 1545-46 n.2 (11th Cir. 1996) (construing official capacity claims as claims against county). His claim against the Sheriff's Department, on the other hand, should have been dismissed by the district court irrespective of its merits. The district court noted that "under Georgia law, the DeKalb County Sheriff's Department is not a legal entity that can be sued apart from the County." Regardless of whether that is correct, because Wayne's official capacity claim against Jarvis is a claim against the County, his claim against the Sheriff's Department of the County is redundant. See Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992) (dismissing claim against sheriff's department where department was not subject to suit). We now proceed to address the merits of the district court's grant of summary judgment in favor of the County, which was properly sued in this case through the official capacity claim against the Sheriff.

14

"[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Board of County Comm'rs v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997), cert. denied, 118 S. Ct. 852 (1998). We have emphasized that:

> [t]o establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.

Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986); see also Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994). Wayne alleges that the County had a policy or custom of housing professed homosexual, bisexual, HIV-positive, and AIDS-positive inmates in E-2-A without regard to the violent propensities of those inmates. We agree with the district court that Wayne failed to proffer sufficient evidence to raise a genuine issue of material fact as to the existence of such a policy or custom.

15

First, Wayne failed to identify a single inmate who: (1) was placed in E-2-A, a medium-security setting, because he professed that he was homosexual, bisexual, HIV-positive, or AIDS-positive; and (2) should have been placed in a higher-security setting because of his propensity for violence. Wayne points to two of the inmates who attacked him -- Nick Tanner and Thomas Loyal -- but neither satisfies both of the above criteria. Although Wayne did produce evidence that Nick Tanner had been classified as a close-security to maximum-security risk, he did not produce any evidence indicating that Tanner had been placed in E-2-A because he professed to be homosexual, bisexual, HIV-positive, or AIDS-positive.

As for Thomas Loyal, Wayne demonstrated that, at least initially, Loyal was moved to E-2-A because he told a classification officer that he was homosexual. But Loyal's initial classification form indicates that he was a medium-security risk and hence appropriately placed in E-2-A, a medium-security dorm. Nevertheless, Wayne argues that Loyal should have been placed in a higher-security setting because Loyal was involved in four violent incidents, three of which took place in E-2-A, in less than two years. But Loyal's inmate classification form indicates that he was removed from E-2-A after two of the violent incidents. Instead of demonstrating that jail officials were placing inmates in E-2-A without regard to their violent propensities, Loyal's

16

classification form indicates that officials transferred inmates out of E-2-A, at least temporarily, in response to violent episodes. We have stated that "[n]ormally random acts or isolated incidents are insufficient to establish a custom or policy." Depew, 787 F.2d at 1499. To the degree that Wayne's argument focuses on the specific decision of jail officials to leave Loyal in E-2-A or to transfer him back to E-2-A after he had been removed, that single decision, even if erroneous, would not support the inference that the County had a custom or policy of placing inmates in E-2-A without regard to their violent propensities. See Church, 30 F.3d at 1346 (isolated incidents not enough to demonstrate "pervasive practice of constitutional violations").

Another aspect of Wayne's failure to create a genuine issue of material fact about a custom or policy is that he did not produce any evidence that only professed homosexual, bisexual, HIV-positive, and AIDS-positive inmates were placed in E-2-A. To the contrary, the evidence in the record indicates Robert Melton, the Jail Commander in 1993, testified at his deposition: "I don't think they were just specifically those types of prisoners but, yes, it could have been that those types of prisoners could have been housed there." Ricky Long, a jail supervisor in 1993, testified at his deposition that known homosexuals were placed in E-2-A, which was considered a special needs cell, but that mentally-ill inmates also were placed in E-2-

17

A. Loyal's inmate classification form indicates that Loyal was returned to E-2-A at one point because he was on a "suicide watch," an entry demonstrating that inmates were placed in E-2-A not just because they professed to be homosexual, bisexual, HIV-positive, or AIDS-positive, but also because they had other special needs, such as those associated with being a suicide risk.

Wayne has failed to satisfy his burden of proffering sufficient evidence to allow a reasonable jury to conclude that the County had a custom or policy of housing professed homosexual, bisexual, HIV-positive, and AIDS-positive inmates in E-2-A without regard to their violent propensities. Accordingly, we affirm the district court's grant of summary judgment in favor of the County.

## C. DID THE DISTRICT COURT ERR IN DENYING WAYNE'S MOTION TO DEPOSE OFFICER ROSCOE?

Finally, Wayne argues that the district court erred in denying his motion for leave to depose Officer Roscoe, the classification officer who completed his inmate classification form. The district court reasoned that "because Plaintiff has already deposed [Sheriff] Jarvis, and R. Wayne Melton, the individual responsible for drafting the classification policy, allowing Plaintiff to depose Officer Roscoe would merely serve to prolong this case unnecessarily." We review a district court's discovery

18

rulings for an abuse of discretion.  See Benson v. Tocco, Inc., 113 F.3d 1203, 1208 (11th Cir. 1997).  We find none here.

Relevant to our resolution of this issue is the lateness of Wayne's request.  In August 1995, the defendants listed "Classification Officer Roscoe" as a potential witness in their answer to Wayne's mandatory interrogatories; Officer Roscoe was the only classification officer listed.  Wayne, however, failed to depose Officer Roscoe during the initial discovery period, which ended on January 7, 1997.  Wayne's explanation for that failure is that he allegedly did not learn that Officer Roscoe was his classification officer until January 27, 1997, when the defendants submitted Wayne's inmate classification form, which lists Officer Roscoe as his classification officer, as an exhibit in support of their motion for summary judgment.  Even assuming Wayne did not learn that Officer Roscoe was his classification officer until Wayne saw the inmate classification form in January 1997, Wayne still did not promptly seek to depose Roscoe at that time.  Instead, Wayne waited six more months and made his request in July 1997, during a period in which the district court had reopened discovery for the limited purposes of allowing Wayne to conduct additional depositions of Officers Bivins and Long and allowing the defendants to comply with Wayne's motion to compel production of documents.  Given the untimely nature of

19

Wayne's request, we cannot say that the district court abused its discretion in refusing to expand the limited scope of the reopened discovery period.

## III. CONCLUSION

AFFIRMED.

HOEVELER, Senior District Judge, concurring, dubitante:

I agree with the well developed opinion of the majority with one exception. As I read Rule 15(c)(3), its emphasis is on the potential prejudice to a newly named defendant -- both subparts (c)(3)(A) and (c)(3)(B) address the new defendant's "notice" and whether that defendant "knew or should have known" that the action would have been brought against him but for a "mistake" concerning the identity of the proper party.

The weight of the law as reflected in several other circuits[1] seems to be that a determination as to whether a "mistake" occurred is a prerequisite to permitting relation back of an amendment. In those circuits, the test is straightforward: if plaintiff lists a "John Doe" defendant, it is due to a lack of knowledge -- not a mistake -- and therefore does not qualify under Rule 15(c)(3).[2] Our case is presented somewhat differently. Wayne's original pro se complaint included information about the "seven unknown deputy sheriffs" he listed as defendants, with a description of their specific actions or locations and the time and date of the incident. So we can

---

[1]But see Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174-75 (3d Cir. 1977).

[2]We suggest, in Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1258 n.9 (11th Cir. 1983), that the word "mistake" should be construed liberally. I take that to mean that the concept "mistake" may be flexible depending upon the circumstances. In Itel it is clear a "new" party was added as a defendant but his addition was permitted because he had clear notice and suffered no prejudice by the addition.

21

presume that the deputies probably had notice and that no prejudice would be involved -- or, at least, that factual inquiry may have established this. I wonder if in the case before us the question of prejudice and notice should be given greater weight than in the case where a plaintiff lacks substantial information as to the right parties to sue. While in the latter case, the weight given to the "mistake" determination is justified; in our case -- and others like it, in which a plaintiff has used improper names, but nevertheless reasonably identified the defendants, the emphasis should, I submit, be placed on notice and prejudice to the defendants. An adherence to a narrow interpretation of the term "mistake" seems misplaced.

Consistent with liberal pleading requirements, an imprecise naming of a defendant does not in all cases prohibit relation back. It seems peculiar to permit relation back when a plaintiff is so lacking in knowledge that he sues the wrong entity or doesn't sue all possible defendants, but not to permit relation back when a plaintiff gets the entities right, but doesn't completely name them. I would have preferred that a finding have been made below regarding the notice or potential prejudice to the deputy sheriffs. Indeed a factual inquiry in the district court may well have established that based on the notice to the defendants in question and the lack of prejudice, they were -- in fact -- "before the court" and that the amendment was

merely to change the name under which they were sued. <u>Powers v. Graff</u>, 148 F.3d 1223, 1226 (11th Cir. 1998) (<u>citing Worthington v. Wilson</u>, 8 F.3d 1253, 1256 (7th Cir. 1993)). While I concur in the result reached by the majority I am moved to suggest, as I have, that in the future a broader treatment of the rule may be in order.