Alexander CLARK, Sr., Plaintiff,

v.

BIBB COUNTY BOARD OF
EDUCATION, Defendant.

No. 5:01–CV–126–1(DF).

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 7, 2001.

Alexander Clark, Sr., Macon, GA, for Plaintiff.

Charles Ashley Royal, Sherry M. Hall, Macon, GA, for Defendant.

## *ORDER*

FITZPATRICK, District Judge.

This case involves a claim under Title IX of the Education Amendments of 1972 for student-on-student sexual harassment. Before the Court is Defendant's motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (tab # 20). Oral argument on Defendant's motion was held on November 5, 2001.

## I. STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to determine whether the plaintiff's complaint, or any part thereof, states a legally sufficient claim for relief. A claim should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court evaluating a motion to dismiss for failure to state a claim upon which relief can be granted must focus its analysis on the face of the complaint, but it may also consider any attachments to the complaint, matters of public record, orders, and items appearing in the record. *See Watson v. Bally Mfg. Corp.*, 844 F.Supp. 1533, 1535 n. 1 (S.D.Fla.1993), *aff'd mem.*, 84 F.3d 438 (11th Cir.1996). Additionally, any documents referenced in the complaint that are central to the plaintiff's case may be con-

sidered. *See In re Sunbeam Sec. Litig.*, 89 F.Supp.2d 1326, 1335 (S.D.Fla.1999).

On a motion to dismiss under Rule 12(b)(6), the facts as alleged must be accepted as true, and the court must construe all reasonable inferences in the light most favorable to the plaintiff. *See Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir.1999) (per curiam). However, the court is not required to accept as true the plaintiff's conclusions of law. *See Solis–Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1429 (11th Cir.1985). If the facts alleged in the complaint would allow the plaintiff to recover under any possible theory, the motion must be denied, regardless of whether they would allow recovery under the particular theory pleaded by the plaintiff. *See Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir.1992).

Because Plaintiff is representing himself in this case, the Court must observe that pro se litigants are entitled to wide latitude when construing their pleadings and papers. *See SEC v. Elliott*, 953 F.2d 1560, 1582 (11th Cir.1992). One court has articulated the underlying policy rationale for this rule as follows: "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Nevertheless, the general rule of liberal construction does not require courts to exempt pro se litigants from complying with the requirements imposed by the relevant rules of procedure and substantive law. *See Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir.1999); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.1989).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mindful of this standard of review, the amended complaint and the attachments thereto reveal the following facts. At the time the incidents giving rise to this case occurred, Plaintiff's daughter, Kimberly, was a student at Riley–Edison Elementary School, a public school in Bibb County, Georgia. On September 2, 1999, one of Kimberly's classmates, Recheze Shelley, touched her twice on her buttocks while they were in line returning from their music class. Two other students saw this happen, and Recheze admitted that he did it. Kimberly reported this incident to her parents, but they were not contacted by anybody from the school. As a result, Plaintiff went to the school the next morning to ask why he and his wife were not contacted about the incident. Sharon Sellers, the principal, told him that she had simply forgotten to call him. Next, at some unspecified time, but apparently during September or October 1999, Recheze said to Kimberly, "Give me some booty." Two other students heard Recheze say this. Finally, on October 15, 1999, Recheze touched Kimberly by sliding his hands from her armpits to her waist while she was sitting at her desk. Their teacher, Ms. Sawyer, saw Recheze do this. Again, neither Plaintiff nor his wife were contacted by anybody from the school; instead, they learned of this incident only when they met with Ms. Sawyer to review Kimberly's report card. Ms. Sawyer told them that she was reluctant to contact them about this incident because the school counselor wanted to handle the situation herself.[1]

On December 13, 1999, Plaintiff met with Sharon Patterson, the Superintendent of the Bibb County Board of Education,

---

**1.** The amended complaint also contains vague allegations that Recheze made comments about Kimberly's breasts, that he ogled her during physical education class, and that his sister threatened her and made an intimidating promise relating to "a brother out of jail."

and expressed his concerns about Recheze's harassment of Kimberly. Also on December 13, 1999, Sylvia W. McGee, the Title IX Coordinator for the Bibb County Board of Education, wrote a letter to Plaintiff chronicling the allegations of harassment and the responsive measures taken by the school. After the first touching incident, (1) Recheze was suspended for one day, (2) a conference was held with Recheze's mother, (3) Ms. Sawyer discussed the sexual harassment policy in the student handbook with the class, (4) Ms. Sellers spoke to the sixth graders about sexual harassment, and (5) Ms. Sawyer moved Kimberly to the front of the class. After the second touching incident, (1) Recheze was referred for various services, (2) Recheze's grandmother was informed of the incident, (3) Ms. Sellers offered to move Kimberly to another class, (4) the school's counselor conducted a classroom guidance activity on personal space, and (5) Recheze was moved to another class. Apparently, other actions were also taken, but they were not disclosed to Plaintiff because of privacy laws.

After the December 13 meeting, Ms. Patterson reviewed the actions taken by the school and called Plaintiff to discuss a plan to assist Kimberly at school. When Plaintiff replied that he wanted to discuss the situation with his wife first, Ms. Patterson suggested that they, as well as Ms. Sellers, meet with her on January 5, 2000. In a letter written to Plaintiff on January 31, 2000, Ms. Patterson memorialized the agreements reached during the January 5 meeting:

1. Kimberly's brother can come (by himself) at dismissal directly to Kimberly's classroom to pick her up and take her home. Previously, Kimberly had met him at that front office.

2. Confirmed that parents are to be called immediately when Kimberly expresses concern at school.

3. Ms. Sellers would find out about "older brother getting out of jail" that you identified as a potential problem and that she would call you about her findings.

4. Discussed identifying a "safe person" who would be a "go to" for Kimberly anytime she had any concerns. You expressed confidences in Mr. Sawyer [sic], Kimberly's teacher to perform that function, and Ms. Sims, the counselor, would be a person for Kimberly to go when needed as a back up. Ms. Sellers would be notified immediately, as would you and/or your wife be notified.

5. Reviewed student schedules to minimize potential contact. Ms. Sellers followed up with all appropriate staff to clarify expectations.

Plaintiff indicated during the January 5 meeting that he wanted Recheze transferred to another school, but Ms. Patterson wrote in her letter that she could not do that at that time, but that she would monitor the situation closely and consider transfer as a future option. Ms. Patterson also offered to have Kimberly transferred to another school as an alternative to Plaintiff withdrawing her from Riley–Edison, but Plaintiff apparently refused that offer.

Plaintiff originally sued Defendant, Ms. Patterson, and Ms. Sellers in June 2000, but that case was dismissed because Plaintiff failed to serve the complaint. Plaintiff then refiled the complaint in March 2001, and Defendant, Ms. Patterson, and Ms. Sellers responded by moving to dismiss the complaint for failure to state a claim upon which relief can be granted. In an order entered on July 2, 2001, the Court assumed that the complaint failed to state a claim upon which relief can be granted, but denied the motion on the ground that

Plaintiff was entitled to at least one opportunity to cure the deficiencies in the complaint. Thus, despite the fact that Plaintiff had not sought leave to amend, the Court granted Plaintiff leave to file an amended complaint. In his amended complaint, Plaintiff reasserted the same cause of action based on Title IX in more detail, but he dropped Ms. Patterson and Ms. Sellers as parties. Plaintiff is seeking $1,000,000 in compensatory and punitive damages.

## III. DISCUSSION

Title IX provides, with certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a) (West 2000). The Supreme Court has interpreted Title IX as authorizing a private action for money damages against a school board for student-on-student sexual harassment. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). However, such an action is available only in certain limited circumstances:

> We thus conclude that funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 650, 119 S.Ct. 1661. In contrast to sexual harassment in other contexts, such a stringent standard of liability is necessary because "schools are unlike the adult workplace and [because] children may regularly interact in a manner that would be unacceptable among adults." *Id.* at 651, 119 S.Ct. 1661.

As a preliminary matter, the Court notes that only funding recipients are subject to suit under Title IX. *See id.* at 640–41, 119 S.Ct. 1661; *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir.1999). Thus, Plaintiff correctly noted in his response brief that the amended complaint dropped Ms. Patterson and Ms. Sellers as parties in both their individual and official capacities.

Turning to the elements of a cause of action for student-on-student sexual harassment under Title IX, the Court finds that Plaintiff's claim fails because Defendant's conduct does not, as a matter of law, show deliberate indifference to the sexual harassment suffered by Kimberly. In reaching this conclusion, the Court assumes for purposes of this order only, but does not decide, that Recheze's conduct constituted sexual harassment, of which Defendant had actual knowledge, that was so severe, pervasive, and objectively offensive that it deprived Kimberly of access to the educational opportunities and benefits provided by the school.

According to the Supreme Court, a funding recipient will be considered to have acted with deliberate indifference to student-on-student sexual harassment only when "the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648, 119 S.Ct. 1661. Although a determination as to whether a school's response was clearly unreasonable depends on the circumstances, it may be made as a matter of law. *See id.* at 649, 119 S.Ct. 1661 (holding that "there is no reason why courts, on a motion to dismiss, ... could not identify a response as not 'clearly unreasonable' as a matter of law"). Under the circumstances of this case, the Court finds that the school's response to the harassment suffered by Kimberly was not, as a matter of law, clearly unreasonable. Indeed, the

December 13 letter written by Ms. McGee and the January 31 letter written by Ms. Patterson document the actions taken by the school in response to Recheze's conduct. Those letters indicate that school officials took immediate action when they learned of the harassment rather than just standing idly by and allowing the harassment to continue unabated. To be sure, they could have taken more severe action against Recheze, but the Court does not sit to second-guess disciplinary decisions made by school officials as long as those decisions are not clearly unreasonable. Because the school officials took some effective action to remedy the situation, their conduct was not clearly unreasonable. Accordingly, Defendant is shielded from liability under Title IX.

 Plaintiff argues that Defendant was deliberately indifferent to the harassment suffered by Kimberly because Recheze was not disciplined severely enough and because the school administrators failed to inform him of the harassment. As to Plaintiff's first argument, the Supreme Court has clearly held that Title IX "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id.* at 648, 119 S.Ct. 1661. Nor does Title IX confer on victims of student-on-student sexual harassment a right "to make particular remedial demands." *Id.* This high standard stems from the well-recognized fact that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* Therefore, whether Plaintiff was satisfied with the school's response to Recheze's harassment is of no moment; all that matters is whether it was clearly unreasonable under the circumstances, and the Court has already concluded that it was not. As to Plaintiff's

second argument, the Court can conceive of a situation in which it might be clearly unreasonable to fail to inform a student's parents that she has been subjected to peer sexual harassment, but this is not such a case. Although the Court has assumed for purposes of this order that the harassment suffered by Kimberly was severe, pervasive, and objectively offensive, it was not so severe, pervasive, and objectively offensive that the school's failure to contact her parents was clearly unreasonable.

## IV. CONCLUSION

The Court is sympathetic to the harassment suffered by Kimberly, and this order should not be construed as approving of Recheze's conduct. However, not all offensive behavior by students is actionable under Title IX. Unfortunately for Plaintiff, the amended complaint and the attachments thereto show that it is beyond doubt that he can prove no set of facts in support of his claim that would entitle him to relief under Title IX. Accordingly, Defendant's motion is **GRANTED.**[2]

**2.** Plaintiff's request for the Court to appoint an attorney for him is **DENIED.**