**James SEEGARS, Jr.; and Joseph Isaac, Plaintiffs,**

v.

**Deputy Chris ADCOX, individually and in his official capacity; Investigator Todd Hanchey, individually and in his official capacity; John Doe Officers # 3 and # 4, individually and in their official capacities; Clay Whittle, Sheriff of Columbia County, Georgia, individually and in his official capacity as Sheriff, Defendants.**

**No. CV101–82.**

United States District Court, S.D. Georgia, Augusta Division.

Sept. 2, 2002.

E. Ronald Garnett, Augusta, for James Seegars, Jr., Joseph Isaac, plaintiffs.

James B. Ellington, Hull, Towill, Norman, Barrett & Salley, PC, Augusta, for John Does, # 1, # 2, # 3, and # 4 Individually and in their official capacities, Clay Whittle, Sheriff of Columbia County, Georgia, Individually and in his official capacity as Sheriff, Chris Adcox, Individually and in his official capacity as Deputy, Todd Hanchey, Individually and in his official capacity as Investigator, defendants.

## ORDER

BOWEN, Chief Judge.

Plaintiffs claim that Defendants violated their Fourth Amendment rights to be free from unreasonable seizure and use of excessive force. Plaintiffs bring this lawsuit under 42 U.S.C. § 1983. Plaintiffs also assert state-law claims of false arrest, assault, and battery. This Court has jurisdiction of those claims under 28 U.S.C. § 1367(a). The parties have filed cross motions for summary judgment. At a hearing on August 23, 2002, the parties discussed their respective motions. For the reasons discussed below, Plaintiffs' motion (Doc. No. 26) is **DENIED,** and Defendants' motion (Doc. No. 30) is **GRANTED.**

### I. Background

This lawsuit stems from events that occurred in the early morning hour of May 30, 1999. Two men allegedly robbed a man at gunpoint as he entered his residence on Cokesbury Court in the Westlynne subdivision of Columbia County. According to the report completed by an officer at the crime scene, the victim described the assailants as black men wearing dark clothes and black knit masks over their heads. (Incident Report, Doc. No. 42, Ex. B1.) The victim reported that the two men ran toward Columbia Road after stealing nearly $15,000.00. (*Id.*)

Earlier that day, Plaintiffs graduated from high school. That evening, Plaintiffs drove to graduation parties in Columbia County held by various classmates. First, Plaintiffs drove to the Westlynne subdivision off Columbia Road. According to Plaintiffs, they left the party by driving to a stop sign, making a left turn, making another left turn, and traveling down that road until it intersected with Columbia Road. (Seegars Dep, Doc. No. 40, at 21–22; Isaac Dep, Doc. No. 39, at 27.)[1] Shortly after midnight, Plaintiffs drove down Columbia Road to attend another party. Even though Plaintiffs had not violated any traffic laws, they noticed that "several police cars were following them" as they traveled down Columbia Road. (Doc. No. 48, at 3.) Unbeknownst to Plaintiffs, they were spotted moments earlier by Defendant Hanchey, an investigator with the Columbia County Sheriff's office. Unfortunately for Plaintiffs, being at the wrong place at the wrong time set an unpleasant ordeal in motion.

After responding to the robbery site, Hanchey was driving around the Westlynne subdivision looking for "anything that stood out." Hanchey spotted Plaintiffs as they were leaving the neighborhood. Even though the suspects were described to Hanchey as two black men last seen fleeing on foot, Hanchey was suspicious of Plaintiffs despite the fact they were traveling in a car. (Hanchey Dep., Doc. No. 42, Ex. D, at 22–23.)

Hanchey contends that Plaintiffs' route through the Westlynne subdivision was aimless, indicating that Plaintiffs were unfamiliar with the neighborhood. (Hanchey Dep., Doc. No. 42, Ex. D, at 25.)[2] In addition, Hanchey followed Plaintiffs because the car had Richmond County tags. (*Id.* at 30.) Hanchey admits that Plaintiffs did not commit any traffic violations. (*Id.* at 26.) While Plaintiffs drove through the subdivision, Hanchey called for another officer to assist him in following Plaintiffs. Hanchey was joined by Deputy Chris Adcox, who had also been looking for "two black males." (Adcox Dep., Doc. No. 48, Ex. G, at 13.)

When Plaintiffs turned off of Columbia Road they were stopped by Hanchey and Adcox. Plaintiffs contend they exited the car in front of the house owned by Jasbir Mokha, whose son was also throwing a graduation party. Seconds later they heard police officers yelling for them to get back into the car. (Seegars Dep., Doc. No. 40, at 23; Isaac Dep., Doc. No. 39, at 31.) Plaintiffs got back into the car. (*Id.* at 25–26; *Id.* at 31.) Isaac contends that he was encouraged to re-enter the vehicle by one of the officers pointing a shotgun directly at him. (Isaac Dep., Doc. No. 39, at 31.) After re-entering the vehicle, Plaintiffs placed their hands outside of the car as requested by the officers. (Seegars Dep., Doc. No. 40, at 26; Isaac Dep., Doc. No. 39, at 31.)

Plaintiff Seegars was ordered to exit the vehicle, instructed to take three steps back, handcuffed, and allegedly laid down in the road. (Seegars Dep., Doc. No. 40,

---

1. Plaintiffs did not provide specific street names.

2. Specifically, Defendant Hanchey claims Plaintiffs traveled south on Holiday Drive which eventually intersects with Columbia Road. Instead of staying on Holiday Drive, Hanchey contends that Plaintiffs took an indirect route by turning right onto Alpine Way, left onto Ashley Circle, left onto Shawns Way, right onto Waylon Drive, left onto Westlynne Drive, and then left onto Columbia Road. (Hanchey Aff., Doc. No. 42, Ex. C, at ¶¶ 21–25.)

at 27.) Plaintiff Isaac was ordered to perform the same procedure. Isaac maintains both he and Seegars were laid down with their chests touching the ground. (Isaac Dep., Doc. No. 39, at 35.) After Plaintiffs were handcuffed, Plaintiff Isaac asked one of the officers why they were stopped. According to Isaac, the officer explained that Plaintiffs fit the description of the armed robbery suspects. Isaac told the officer that he was not black, and the officer allegedly responded that Isaac was "close enough." [3] (Isaac Dep., Doc. No. 39, at 37.)

Plaintiffs point out that a detailed description of the suspects—more than just their race and sex—was disseminated over police radio ten minutes before Plaintiffs were stopped. (Hanchey Dep., attached to Doc. No. 27, Ex. P2.) The suspects were described as two black males wearing dark clothes, face masks, measuring 5'8" to 5'9" tall. Plaintiffs are 6'4" and 6'3" tall. (Doc. No. 48, at 4.) That evening, Seegars wore a red shirt with tan shorts; Isaac wore a green shirt and tan shorts. (Doc. No. 42, Ex. M.)

Additionally, Plaintiffs maintain that Jasbir Mokha, the owner of the house on Woodcreek Drive who knew Seegars, approached the officers to inquire about the stop. (Mokha Dep., Doc. No. 37, at 12.) Mokha was told to step aside. The officers never spoke to Mokha beyond asking him to stay out of the way. (*Id.* at 17.)

Plaintiffs contend that at some point they were both lifted from a kneeling posture to their feet by the handcuffs. If Plaintiffs' allegation is true, such conduct by a law enforcement officer is reprehensible. Plaintiffs allege that they sustained shoulder injuries as a result of Defendants' actions. (Seegars Dep., Doc. No. 40, at 50; Isaac Dep., Doc. No. 39, at 38–39, 74–75.)

While Plaintiffs were restrained, the officers searched the car. (Seegars Dep., Doc. No. 40, at 29; Isaac Dep., Doc. No. 39, at 38.) After a search of the car, Plaintiffs were lifted to their feet and the handcuffs were removed. Seegars was asked for identification and then signed a form. Plaintiffs were then released from the investigation. Isaac asserts that the officers pointed guns at them until "after everything was-you know, they were leaving." (Isaac Dep., Doc. No. 39, at 51.) Plaintiff Isaac contends the stop lasted from fifteen to twenty minutes. (Isaac Dep., Doc. No. 39,at 56.) Seegars agrees with the police document revealing the stop took seventeen minutes. (Seegars Dep., Doc No. 40, at 36.)

Defendants Hanchey and Adcox do not recall certain details of the stop that Plaintiffs remember. Adcox and Hanchey do not recall whether Plaintiffs were laid on the ground. (Adcox Dep., Doc. No. 48, Ex. G, at 25–26; Hanchey Dep., Doc. No. 48, Ex. B, at 31.) Additionally, neither Hanchey nor Adcox recall making or hearing the statement that Isaac was "close enough" when Isaac insisted he was not black. (Adcox Dep., Doc. No. 48, Ex. G, at 30; Hanchey Dep., Doc. No. 48, Ex. B, at 34.) Surprisingly, the officers did not complete an incident report which could

---

**3.** According to Isaac, he is not black. (Isaac Dep., Doc. No. 39, at 51–52.) Instead, Isaac describes himself as having an olive complexion. (*Id.* at 37.) At the hearing, Plaintiffs' counsel described Isaac as white and that, in his opinion, Isaac could not be mistaken for a black person. Interestingly, Adcox recorded that Isaac was white on the field interview card written at the investigatory stop. (Doc. No. 42, Ex. M.)

have refreshed their memories.[4]

It is not Defendants' inability to recall the smaller details, however, that is most troubling to the Court. Instead, the Court is baffled that Adcox and Hanchey restrained and detained Plaintiffs even though the young men did not match the description of the suspects disseminated ten minutes before the stop occurred. According to dispatch records, the suspects were described as two black males, wearing dark clothes and face masks, measuring 5′8″ to 5′9″ tall. (Hanchey Dep., attached to Doc. No. 27, Ex. P2.) Although the officers may have been unable to discern whether Plaintiffs matched that description while Plaintiffs were in the car, that observation might easily have been made once Plaintiffs exited the car. Adcox concedes that Plaintiffs did not match the description of the suspects once they were removed from the car. (Adcox Dep., at 29, 44–46.) Hanchey also admits that Plaintiffs did not match the description sent out by the dispatcher. (Hanchey Dep., at 51.)

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels,* 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus,* 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere

---

**4.** Adcox filled out "Field Interview Cards" for both Seegars and Isaac. (Doc. No. 42, Ex. M.) These cards merely provide Plaintiffs' names, addresses, vehicle description, and physical characteristics.

conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark,* 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who· bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick,* 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Rule 56.

The Clerk has given the parties notice of the summary judgment motions and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. Nos. 29 & 41.) Therefore, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motions are ripe for consideration.

## III. Analysis

Plaintiffs claim that Defendants violated their Fourth Amendment rights to be free from unreasonable seizure and the use of excessive force. Plaintiffs also assert state-law claims of false arrest, assault, and battery against Adcox, Hanchey, John Doe # 3, and John Doe # 4. Defendants move for summary judgment on several grounds. I will address first the claims against the officers, followed by a discussion of the claims against Sheriff Whittle.

### A. Statute of Limitations

█ Defendants assert that Plaintiffs' claims against Adcox and Hanchey are barred by a statute of limitations. Section 1983 claims have a two-year statute of limitations. *See Williams v. City of Atlanta,* 794 F.2d 624, 626 (11th Cir.1986). Plaintiffs' state-law claims of false arrest, assault, and battery also have a two-year statute of limitations. *See M.H.D. v. Westminster Schools,* 172 F.3d 797, 803 (11th Cir.1999) (statute of limitations for assault and battery are two years); *Reese v. City of Atlanta,* 247 Ga.App. 701, 702, 545 S.E.2d 96 (2001) (statute of limitations for false arrest is two years).

Plaintiffs were stopped on May 30, 1999. Plaintiffs filed suit on May 23, 2001, against Sheriff Clay Whittle and John Does # 1–# 4. (Doc. No. 1.) Defendants answered the Complaint on July 7, 2001. (Doc. Nos. 7 & 8.) In their Answer, the

John Doe defendants asserted that they did not receive sufficient process. (Doc. No. 7, at 4.) On November 13, 2001, Plaintiffs amended their Complaint to replace John Doe #1 and #2 with Defendants Adcox and Hanchey. John Does #3 and #4 remain unnamed. Subsequently, Defendants Adcox, Hanchey, John Doe #3, and John Doe #4 answered the Amended Complaint. (Doc. No. 17.) John Does #3 and #4 asserted once more that they received insufficient process. (*Id.* at 4.)

Plaintiffs filed suit just within two years of the incident. Plaintiffs amended their Complaint to name Adcox and Hanchey over five months after the statute of limitations had expired. Because the Amended Complaint was filed well after the statute of limitations had run, Defendants contend that Plaintiffs' claims against Adcox and Hanchey are barred.

Whether Plaintiffs' claims against the officers at the stop are barred by statutes of limitation depends upon whether Plaintiffs' Amended Complaint relates back to the filing date of the original Complaint. If it does relate back, Plaintiffs' claims are not barred; conversely, if the Amended Complaint does not relate back, Plaintiffs' claims are barred. Defendants, of course, contend that the Amended Complaint does not relate back to the original Complaint. Plaintiffs contend that the Amended Complaint relates back because they attempted to serve John Does #1–#4 within the two-year statute of limitations. Moreover, Plaintiffs contend that they attempted to discover which officers were involved in the incident before the suit was filed, but

were not given any information by the Sheriff's Office.[5] (Doc. No. 48, Ex. K.)

An amended complaint relates back to the date of the original complaint under limited circumstances. Fed.R.Civ.P. 15(c). For example, an amendment that changes the party or the naming of the party relates back if the party to be brought in was served within 120 days of the filing of the original complaint and the party received notice of the suit and knew or should have known the action would have been brought against him, but for the mistake concerning the identity of the party. *Id.* at 15(c)(3). Lack of knowledge regarding the identities of possible defendants, however, is not "a mistake concerning the identify of a proper party." *Wayne v. Jarvis,* 197 F.3d 1098, 1103 (11th Cir.1999). The purpose of the rule was to allow for relation back "only if the change is the result of an error, such as a misnomer or misidentification." *Id.* (citation omitted).

Plaintiffs did not merely misname or misidentify Adcox and Hanchey; rather, Plaintiffs lacked knowledge of which officers were involved in the stop. This lack of knowledge is due to Plaintiffs' less than spirited attempt to obtain the identities of the officers. Plaintiffs' inability to identify the officers within the statutes of limitation is a result of the last-minute filing of the suit. If Plaintiffs had filed suit earlier, the identities of officers could have been discovered in time to amend the complaint before the statute of limitations ran. *See id.* (ruling that plaintiff should bear the consequences of his own delay). Accordingly, Plaintiffs' claims against Adcox and

---

**5.** Plaintiffs' counsel contacted the Columbia County Sheriff's Department about the stop by letter dated May 1, 2001. The letter sought information about "an incident which occurred on *May 29, 1999.*" (Doc. No. 48, Ex. K) (emphasis added). Perhaps because

the incident actually occurred on May 30, 1999, the Sheriff's Office responded to Plaintiffs' request with the statements "We have no information on this report. We need more info." (*Id.*)

Hanchey are barred because "an amended complaint replacing a 'John Doe' defendant with that defendant's correct name does not relate back under Rule 15(c)(3)." *Id.*

Plaintiffs' claims against John Does # 3 and # 4 must also be dismissed. Service of a summons and complaint must be made upon a defendants within 120 days after the filing of the complaint. Fed.R.Civ.P. 4(m). Failure to serve the unnamed defendants requires dismissal of the claims asserted against them. *Id.* Plaintiffs have never served John Doe # 3 or John Doe # 4. Even if Plaintiffs could identify the unnamed defendants and serve those defendants, those claims would also be barred by the statute of limitations. Accordingly, the claims against John Does # 3 and # 4 are dismissed.

## B. Defendant Whittle

■ Plaintiffs assert claims for unreasonable seizure and excessive force against Clay Whittle, Sheriff of Columbia County, in his individual and official capacities. More specifically, Plaintiffs contend that Sheriff Whittle developed and maintained customs and policies that allowed for the violation of Plaintiffs' Fourth Amendment rights. (Doc. No. 13, ¶¶ 30–33.)

### 1. Official Capacity

Plaintiffs' suit against Sheriff Whittle in his official capacity is the functional equivalent of suing Columbia County. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105

S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Alexander v. Fulton County,* 207 F.3d 1303, 1322 n. 14 (11th Cir.2000) (noting that suing sheriff in official capacity was functional equivalent of suing County).[6] A county is not liable for deprivations of constitutional rights committed by an employee based on the theory of *respondeat superior. Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Denno v. Sch. Bd. of Volusia County,* 218 F.3d 1267, 1277 (11th Cir.2000), *cert. denied,* 531 U.S. 958, 121 S.Ct. 382, 148 L.Ed.2d 295 (Oct. 30, 2000). In order for the County to be held liable, Plaintiffs must show that the violations occurred as a result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled it assumes the force of law." *Denno,* 218 F.3d at 1276.

Plaintiffs assert that the Sheriff's Office had policies or customs that led to inadequate training and supervision of officers or improper investigation of citizen complaints.[7] Because Plaintiffs want to establish liability, at least in part due to a custom or practice, Plaintiffs must demonstrate that the alleged deprivations he experienced are the result of a "persistent and widespread practice." *Id.* at 1277. Additionally, Plaintiffs must identify an official policy or a custom that caused their injuries and establish a causal link be-

---

6. The Eleventh Circuit, en banc, will soon reconsider whether a sheriff in the State of Georgia is a state or county official. *Manders v. Lee,* 285 F.3d 983 (11th Cir.2002), *vacated by* 300 F.3d 1298 (11th Cir.2002).

7. Plaintiffs contend that the Sheriff's Office does not investigate citizen complaints ade-

quately; however, Plaintiffs did not file citizen complaints regarding the May 30, 1999 incident. (Seegars Dep., Doc. No. 40, at 42; Isaac Dep., Doc. No. 39, at 59.) Furthermore, they provided no other evidence that the Sheriff's Office fails to investigate citizen complaints.

tween the policy or custom and the injuries. *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998).

Plaintiffs, however, have not pointed to any policy or custom that caused the alleged constitutional violations. (Doc. No. 48, at 11.) Instead, Plaintiffs make bald assertions that the conduct of the officers reflect a pattern and practice of the Sheriff's Office to commit violations of the Fourth Amendment. (*Id.*) Consequently, Plaintiffs have failed to come forward with evidence from which a jury could find the existence of any policy or custom leading to a violation of Plaintiffs' constitutional rights.

Defendants, however, provide evidence that the Sheriff's Office adequately trains and supervises its officers. In May 1999, each officer received two policies and procedures manuals. (Whittle Aff., Doc. No. 42, Ex. O.) Additionally, officers must complete ninety-two hours of basic training and forty hours of annual "in-service" training. (*Id.*) The forty-hour requirement doubles the amount required by the State of Georgia to maintain officer certification. (*Id.*)

### 2. Individual Capacity

■ In addition to suing Defendant Whittle in his official capacity as Sheriff of Columbia County, Plaintiffs also sued Whittle in his individual capacity. Whittle asserts that he is entitled to qualified immunity. However, it is not necessary to analyze the applicability of qualified immunity because the record lacks any evidence linking Whittle to the alleged deprivation of Plaintiffs' Fourth Amendment rights.

A basic element of a successful § 1983 claim is causation. The Supreme Court has stated that § 1983 "should be read

against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds,* 436 U.S. 659 (1978). Section 1983 recognizes that a defendant's actions must also proximately cause a plaintiff's harm. *See Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir.1989) (listing other acts that broke "the chain of causation").

Plaintiffs have failed to establish that Whittle participated directly or indirectly in the stop, thereby causing the alleged constitutional violation. Whittle was not present when Plaintiffs were stopped. (Whittle Aff., Doc. No. 42, Ex. O, at ¶ 20.) Moreover, there is no evidence that Whittle developed a policy or custom that led to a violation of Plaintiffs' rights. In fact, Defendants present evidence to the contrary that Whittle developed and maintained policies to prevent the violation of Plaintiffs' constitutional rights. (Doc. No. 42, Ex. O.) Accordingly, Plaintiffs claims against Defendant Whittle are dismissed.

### IV. Conclusion

Defendants' Motion for Summary Judgment (Doc. No. 30) is **GRANTED.** Plaintiffs' Motion for Summary Judgment (Doc. No. 26) is **DENIED.** The Clerk is instructed to **CLOSE** the captioned case and to enter **FINAL JUDGMENT** in favor of Defendants. Costs are taxed against Plaintiffs.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ Decision by Court. This action came before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

Defendants' Motion for Summary Judgment (Doc. No. 30) is GRANTED. Plaintiffs' Motion for Summary Judgment (Doc. No. 26) is DENIED. The Clerk is instructed to Close the captioned case and to enter FINAL JUDGMENT in favor of Defendants. Cost are taxed against Plaintiffs.